47 So.3d 767 (2008)
Ex parte Donald McINISH
(In re KGS Steel, Inc. v. Donald McInish).
1060600.
Supreme Court of Alabama.
September 5, 2008.
Rehearing Denied December 19, 2008.
*768 E.L. Brobston of Brobston & Brobston, P.C., Bessemer, for petitioner.
*769 Joseph H. Driver and Bennett L. Pugh of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for respondent.
BOLIN, Justice.
In April 1999, Donald McInish sued his employer, KGS Steel, Inc., seeking worker's compensation benefits for injuries he allegedly sustained during the course of his employment as a truck driver with KGS. McInish specifically alleged that, during the course of his employment as a truck driver, he had been subjected to "violent bouncing and jerking movement" that had caused him to suffer from carpal tunnel syndrome and that this movement, combined with "strain caused by strapping and binding cargo loads," had caused him to suffer injury to his shoulders and neck. McInish further alleged that he had suffered both a temporary- and a permanent-partial disability as the result of his alleged respective injuries.
Following an ore tenus proceeding, the trial court entered an order finding that McInish was totally and permanently disabled as a result of his neck and shoulder injuries; that he had sustained a 100% loss of earning capacity; that he had proven both medical and legal causation; and that KGS was responsible for payment of certain medical expenses incurred by McInish as a result of treatment undertaken by a medical provider not authorized by KGS.
KGS appealed the trial court's judgment to the Court of Civil Appeals. The Court of Civil Appeals, in a per curiam opinion with which one judge concurred (three judges concurred in the result), reversed the judgment of the trial court, on the basis that McInish had failed to prove causation by clear and convincing evidence. KGS Steel, Inc. v. McInish, [Ms. 2040526, June 30, 2006] 47 So.3d 749 (Ala.Civ.App. 2006). We granted McInish's petition for a writ of certiorari to determine: (1) whether the Court of Civil Appeals applied an improper standard of review; and (2) whether the Court of Civil Appeals improperly considered only the testimony of the medical experts in determining the issue of causation, in contravention of this Court's decision in Ex parte Price, 555 So.2d 1060, 1063 (Ala.1989).

Facts
The Court of Civil Appeals set forth the following statement of the facts:
"McInish was a tractor-trailer truck driver for KGS, and there was evidence adduced at trial indicating that the suspension system of his assigned truck subjected him to violent vibrations. McInish testified that during the last year of his employment with KGS he had started to experience severe pain, numbness, and a tingling sensation in his hands and arms and that he had reported those symptoms to KGS.
"McInish was referred by KGS to Dr. Donald Autry for treatment. Dr. Autry determined that McInish had carpal tunnel syndrome and performed a surgical carpal-tunnel-release procedure on each of McInish's wrists. In subsequent months, McInish reported further pain, including pain in his shoulder and upper arm. McInish was then referred to Dr. Richard Meyer, an orthopedic surgeon, for a second opinion; Dr. Meyer determined that McInish had problems in his neck and hand. Dr. Meyer suggested that McInish undergo a second carpal-tunnel-release procedure; however, because McInish was dissatisfied with the results of the carpal-tunnel-release procedures that had already been performed and because he did not want to go through another carpal-tunnel-release procedure if carpal tunnel syndrome was not his principal medical problem, McInish sought the opinion of *770 his own personal physician without obtaining KGS's approval. McInish's personal physician then referred McInish to Dr. Cem Cezayirli, a neurosurgeon. Dr. Cezayirli, who was also not authorized by KGS to treat McInish, nonetheless admitted him into the hospital for cervical-disk surgery, during which significant ruptured-disk material and a herniated disk compressing the neuroforamen and the spinal cord were found. After his cervical-disk surgery, McInish was permitted by Dr. Cezayirli to return to work. However, McInish was reportedly unable to perform his job because of pain, and he has not worked since January 27, 1999.
". . . .
"Dr. Meyer, McInish's authorized orthopedic surgeon, testified at his deposition that after a magnetic-resonance-imaging procedure had been performed in late 1998 and had revealed bulging cervical disks and neck-nerve pressure related to osteoarthritis, he had referred McInish to Dr. John S. Kirkpatrick, who had concluded that the arthritis in McInish's neck `would probably not be work related.' Dr. Meyer also opined that the majority of the pain McInish had experienced was related to that osteoarthritis and denied that McInish's occupation could have caused or aggravated his osteoarthritis. Dr. Meyer further opined on cross-examination by McInish's attorney that driving a truck subject to constant vibration and shaking would not adversely affect McInish's condition as to his neck and shoulders.
"Dr. Edward Kelsey, a pain specialist whom McInish consulted without authorization from KGS, opined that McInish suffered from degenerative joint disease (essentially, a pronounced case of advanced osteoarthritis) and from `post laminectomy syndrome.' After indicating that repeated trauma `can cause microscopic changes in the bone structure and in the joints' so as to accelerate osteoarthritis, he opined that McInish's occupation would be `consistent with' this type of trauma and that the problems reported by McInish `could have been' as a result of cumulative trauma. However, Dr. Kelsey also opined that McInish's advanced osteoarthritis had set in over the course of an approximately `ten-year period of time,' whereas McInish worked for KGS for less than one and a half years before filing a first report of injury in November 1997. Further, Dr. Kelsey, on cross-examination, admitted that he did not have any evidence to dispute Dr. Kirkpatrick's and Dr. Meyer's opinions that McInish's neck and shoulder conditions were not work related, and in response to a question concerning whether he could state with any degree of medical certainty that McInish's neck and shoulder problems were work related, he stated that he could not definitely say that those symptoms were work related.
"Dr. Laura B. Kezar, a physician who examined McInish in March 1999 upon the referral of Dr. Thomas, noted in her report of that examination her impression that McInish suffered from cervical spondylosis and degenerative disk disease; she noted in her report that McInish had not supplied a `history to suggest an acute disc herniation related to a traumatic event at work' and that he had reported `no history of neck pain until after the surgery on his neck' was performed by Dr. Cezayirli. Dr. Kezar opined that McInish's neck pain `appear[ed] to be mainly myofascial in origin' (i.e., muscular) and averred that it `d[id] not seem likely' that McInish's work caused the problems in his neck `based on the history that he ha[d] given' her.
"Certain records of Dr. Cezayirli, who performed the cervical-disk surgery on McInish, were also admitted into evidence. *771 In a March 1999 letter to Dr. Reid S. Christopher, Dr. Cezayirli indicated that McInish had told him that `he thinks this is work-related.' Dr. Cezayirli opined that `it certainly could be work-related,' but he stated that it was difficult for him to render such an opinion because, he said, McInish consulted him well after any on-the-job injury would have occurred. However, in a November 1999 letter to McInish's counsel, he expressly deferred to the treating physician who had seen McInish at the time he had originally reported symptoms (e.g., Dr. Meyer).
"At trial, McInish himself testified that he had not experienced comparable levels of neck and shoulder pain before working for KGS, that he believed that that pain could be related to `throwing. . . chains and binders and driving [his] truck,' and that KGS was responsible for his having sustained what he termed `spinal cord damage' because, he said, KGS `wouldn't take care of the problem in my neck and kept pushing me off.' However, on cross-examination, McInish admitted having executed an application for disability-income benefits in March 1999 on which appeared the response of `no' to a question asking whether his claimed disability had resulted from his employment; he also admitted having received monthly benefit payments of over $500 after that application was submitted. McInish further testified to having unsuccessfully requested KGS personnel in April 1999 to amend his November 1997 written first notice of injury, which had indicated only `wrist pain and numbness,' to include a shoulder injury."
KGS Steel, 47 So.3d at 753-54.

Discussion
In reversing the trial court's decision, the Court of Civil Appeals applied the following standard of review:
"It is well settled that when the preponderance-of-the-evidence standard applies to a particular workers' compensation claim, such as one arising from an injury caused by a sudden trauma, an appellate court will not reverse a judgment based upon a particular finding of fact `if that finding is supported by substantial evidenceif that finding is supported by "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."' Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996) (quoting West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989)) (emphasis added). However, as the main opinion in Ex parte Russell Corp., 725 So.2d 264 (Ala. 1998), indicates, a mere `substantial evidence' standard of appellate review is not to be applied if the `clear-and-convincing-proof' standard was applicable at trial. In other words, by incorporating a `clear and convincing' evidentiary standard into the Act with respect to gradual-deterioration and cumulative-stress injuries, the legislature has `require[d] a comparison between the supporting evidence and any countervailing evidence' on appellate review. See Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1128 (Ala.2003) (Johnstone, J., dissenting, joined by Woodall, J.). Thus, `there is necessarily a "reweighing" of the evidence at the appellate level[] for th[e] limited purpose' of determining whether factual determinations are supported by the appropriate level of evidence (here, `clear and convincing proof'). See id. at 1131 (Harwood, J., dissenting) (emphasis omitted)."
KGS Steel, 47 So.3d at 752. The per curiam opinion of the Court of Civil Appeals *772 ultimately held that the expert medical evidence presented amounted to "nothing more than a showing of `possible' causation" that was insufficient to establish that McInish's injuries arose out of his employment. KGS Steel, 47 So.3d at 754.
Justice Murdock, a member of the Court of Civil Appeals when that court decided this case, explained, in a special writing concurring in the result, the import of the court's application in this case of the particular standard of appellate review, stating:
"Were the lead opinion to be joined by a majority of the judges of this court, it would disturb what heretofore have been the most fundamental and settled of principles governing appellate reviewprinciples that are firmly established in workers' compensation cases, just as they are in civil cases generally.. . .
". . . .
"The lead opinion reaches its result by proposing to unsettle two fundamental principles of appellate review. The first is that when a trial court makes findings based on evidence received ore tenus, those findings are to be upheld on appeal if supported by `substantial evidence.' The second principle, which is a corollary to and informs the proper operation of the first, is that when evidence is received by a trial court ore tenus, it is uniquely the trial court's responsibility to assess the quality of that evidence, including its credibility, and the weight to be assigned thereto, and that the appellate courts are not equipped, and it is not their role, to make their own assessment of the quality, credibility, or weight to be assigned to the evidence. In other words, appellate courts do not reweigh the evidence."
KGS Steel, 47 So.3d at 756 (Murdock, J., concurring in the result).
We initially point out that the authority relied on by the per curiam opinion of the Court of Civil Appeals in fashioning this standard of review is not binding authority and has no precedential value. This Court's opinion in Ex parte Russell Corp., 725 So.2d 264 (Ala.1998), was joined by only four Justices serving on this Court at that time. Of course the dissenting opinions of Justice Johnstone and Justice Harwood in Ex parte Southern Energy Homes, Inc., 873 So.2d 1116 (Ala.2003), are not binding precedent.
Second, this Court has repeatedly held that "the [1992 Workers' Compensation] Act `did not alter the rule that [the Court of Civil Appeals] does not weigh the evidence before the trial court.' (Emphasis added.)" Ex parte Phenix Rental Ctr., 873 So.2d 226, 229 (Ala.2003) (quoting Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995)); see also Ex parte Kmart Corp., 812 So.2d 1205, 1207 (Ala.2001); Ex parte Golden Poultry Co., 772 So.2d 1175, 1176-77 (Ala.2000); and Ex parte Alabama Ins. Guar. Ass'n, 667 So.2d 97 (Ala.1995).
This Court's holding that appellate courts do not reweigh the evidence on appeal in a workers' compensation case is supported by the express language of the Workers' Compensation Act itself. Section 25-5-81(c), Ala.Code 1975, sets forth two evidentiary standards and further designates the type of workers' compensation claims to which each evidentiary standard is applicable. Section 25-5-81(c) provides:
"(c) Evidence. The decision of the court shall be based on a preponderance of the evidence as contained in the record of the hearing, except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be *773 deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment.
"For the purposes of this amendatory act, `clear and convincing' shall mean evidence that, when weighted against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
(Emphasis added.)
The statutory definition of clear and convincing evidence found in § 25-5-81(c) reaffirms and embodies the well-established and fundamental principle of appellate review that the weighing of evidence presented ore tenus in a workers' compensation case is to be performed by the trier of fact, not the appellate court. Indeed, the trial court is in the best position to weigh conflicting evidence and to judge the credibility of witnesses in determining such issues as causation. See Ex parte Alabama Ins. Guar. Ass'n, supra; Drummond Co. v. Green, 895 So.2d 977 (Ala.Civ. App.2004).
Section 25-5-81(e), Ala.Code 1975, sets forth the following standards that govern the appellate court's review of a trial court's findings of fact and rulings on issues of law in a workers' compensation case, including standards of proof:
"(e) Review. From an order or judgment, any aggrieved party may, within 42 days thereafter, appeal to the Court of Civil Appeals and review shall be as in cases reviewed as follows:
"(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
"(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."
(Emphasis added.)
Then Judge Murdock noted in his special writing in this case that § 25-5-81(e) does not "draw[] any distinction between [the] two trial-court evidentiary standards," i.e., preponderance of the evidence versus clear and convincing proof, when setting forth the applicable appellate standard of review for workers' compensation cases.
Although the statutorily prescribed substantial-evidence standard of appellate review found in § 25-5-81(e) draws no distinction between the preponderance-of-the-evidence standard of proof and the clear-and-convincing-evidence standard of proof, nevertheless, the two standards obviously differ as to the quantum of proof necessary to sustain a factual finding on appeal based on the two different standards. The quantum of proof necessary to sustain on appeal a finding of fact based on the heightened clear-and-convincing-evidence standard of proof is greater than the quantum of proof necessary to sustain on appeal a finding of fact based on the lesser preponderance-of-the-evidence standard. Then Judge Murdock explained, in his special writing, the substantial-evidence standard of review in the context of the heightened clear-and-convincing evidentiary standard as follows:
"[Substantial evidence is] `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' E.g., West v. Founders Life Assurance *774 Co. of Florida, 547 So.2d 870, 871 (Ala. 1989) (quoted with approval in Ex parte Southern Energy Homes, Inc., 873 So.2d [1116] at 1122 [(Ala.2003)]).
"Although `substantial evidence' must be found by the appellate court in order to sustain the trial court's findings in any workers' compensation case, it is necessary to take into consideration the nature of the finding that must be made by the trial court in order to determine what qualifies as `substantial evidence' to support that finding. In a case in which, in order to find for the plaintiff, the trial court is required to find that a given fact has been established by a `preponderance' of the evidence, the evidence is not sufficient to allow appellate affirmance of a judgment based on that finding unless the record contains evidence from which the fact-finder reasonably could have determined that the fact was proven by a preponderance of the evidence. In a case in which, in order to find for the plaintiff, the trial court is required to find that a given fact has been established by `clear and convincing' evidence, the evidence is not sufficient to allow appellate affirmance of a judgment based on that finding unless the record contains evidence from which the fact-finder reasonably could have determined that the fact was proven by clear and convincing evidence. Contrary to the suggestion in the lead opinion, the process of making this determination by an appellate court is, in its essence, no different in one case than in the other, and no more requires an appellate court to engage in the weighing or `reweighing' of evidence in one case than in the other.
"In Ex parte Norwood Hodges Motor Co., 680 So.2d 245 (Ala.1996), our Supreme Court considered the quantum of evidence necessary to require submission of factual questions to the jury when the ultimate evidentiary standard is greater than a mere preponderance of the evidence. The Court began its analysis by taking note of § 12-21-12(a) and (c), Ala.Code 1975, which state:
"`"(a) In all civil actions brought in any court of the state of Alabama, proof by substantial evidence shall be required to submit an issue of fact to the trier of the facts. Proof by substantial evidence shall be required for purposes of testing the sufficiency of the evidence to support an issue of fact in rulings by the court, including without limitation, motions for summary judgment, motions for directed verdict, motions for judgment notwithstanding the verdict, and other such motions or pleadings respecting the sufficiency of evidence."
"`__________
"`"(c) With respect to any issue of fact for which a higher standard of proof is required, whether by statute, or by rule or decision of the courts of the state, substantial evidence shall not be sufficient to carry the burden of proof, and such higher standard of proof shall be required with respect to such issue of fact."'
"680 So.2d at 248 (emphasis added).
"Although Ex parte Norwood Hodges Motor Co. involved the question whether the trial court had erred in granting a directed verdict (now a judgment as a matter of law . . .) to a defendant on the question of the plaintiff's entitlement to punitive damages, as noted in the above-quoted text of § 12-21-12(a), the statute contemplates the same treatment for any motion testing the sufficiency of the evidence. Logically, of course, the same treatment is proper for testing the sufficiency of the evidence by an appellate court. It therefore is instructive that, in *775 considering the text of both subsection (a) and subsection (c) of § 12-21-12, the Supreme Court concluded in Ex parte Norwood Hodges Motor Co. that
"`the trial court should have determined whether the evidence warranted submitting the issue of punitive damages to the jury, i.e., whether there was evidence of such quality and weight that a jury of reasonable and fair-minded persons could find by clear and convincing evidence that the defendant consciously or deliberately engaged in fraud.'
"Ex parte Norwood Hodges Motor Co., 680 So.2d at 249 (emphasis added). As our Supreme Court explained in Lowman v. Piedmont Executive Shirt Manufacturing Co., 547 So.2d 90 (Ala.1989),
"`a plaintiff, in order to go to the jury on a claim [alleging intentional tortious conduct], must make a stronger showing than that required by the "substantial evidence rule" as it applies to the establishment of jury issues in regard to tort claims generally. See Code 1975, § 12-21-12. Therefore, . . . the plaintiff must present evidence that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud.'
"547 So.2d at 95 (quoted with approval in Hobbs v. Alabama Power Co., 775 So.2d 783, 787 (Ala.2000), ITT Specialty Risk Servs., Inc. v. Barr, 842 So.2d 638, 646 (Ala.2002), and Soti v. Lowe's Home Ctrs., Inc., 906 So.2d 916, 923 (Ala.2005)) (emphasis added). Cf. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3, 9 (Ala.1997) (quoting with approval the trial court's order denying a postjudgment motion for relief in which the trial court explained that `"[t]here was evidence from which the jury could find, by a clear and convincing standard, that"' the requisite element of the plaintiff's claim had been proven).
"As I wrote in Gary v. Crouch, 923 So.2d 1130 (Ala.Civ.App.2005):
"`The "clear-and-convincing-evidence" standard . . . is the standard ultimately to be applied at trial by the fact-finder in this [defamation] case, just as the "preponderance-of-the-evidence" standard is applied in most civil cases by the fact-finder. The responsibility for making ultimate factual determinations resides with the fact-finder, in this case a jury, not with a trial judge in considering a summary-judgment motion. It is no more the responsibility of a trial judge in considering a motion for a summary judgment to make the ultimate determination of whether a plaintiff in a defamation suit has proven constitutional malice by clear and convincing evidence than it would be for a trial judge considering a summary-judgment motion in an ordinary lawsuit to determine whether a plaintiff has demonstrated the elements of his or her claim by a preponderance of the evidence.
"`When the ultimate standard to be applied by the fact-finder in a civil case is a preponderance-of-the-evidence standard, it is for the trial judge . . . to determine only whether there is a genuine issue of material fact. That determination, in turn, is a function of whether there is "substantial evidence" as to that material fact. In the context in which preponderance of the evidence is the ultimate standard of proof for the fact-finder, substantial evidence has been defined simply as that evidence from which the fact-finder could reasonably infer the existence of the fact sought to be proved.

*776 "`Similarly, substantial evidence in the context of a case in which the ultimate standard for a decision is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly establish [the existence of] the fact sought to be proved. Thus, even if a trial judge reaches his or her own conclusion that the evidence presented does not clearly and convincingly establish constitutional malice, it is not for him or her to act upon that factual determination, but to determine instead whether the actual fact-finder could reasonably make a different finding based upon the same evidence.. . . [T]he opinion of the United States Supreme Court in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), . . . verifies that any different conclusion would be inappropriate.'
"923 So.2d at 1141-42 (Murdock, J., concurring in the result). . . .
"Likewise, the evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly establish the fact sought to be proved. Even if an appellate court in considering the evidence of record would reach its own conclusion that the evidence presented does not clearly and convincingly establish the fact sought to be proved, it is not for that court to act upon its own factual determination but to determine instead whether the fact-finder below reasonably could have made a different finding based on the same evidence.
"Although it dealt with the issue of the sufficiency of the evidence in the context of summary-judgment and directed-verdict motions, the reasoning of the United States Supreme Court in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), is persuasive:
"`[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. . . .
"`. . . [In a defamation case], where the First Amendment mandates a "clear and convincing" standard, the trial judge in disposing of a directed verdict motion should consider whether a reasonable fact-finder could conclude, for example, that the plaintiff had shown actual malice with convincing clarity.
"`. . . [I]n United States v. Taylor, 464 F.2d 240 (2d Cir.1972), . . . [the Court] pointed out that almost all the Circuits had adopted something like Judge Prettyman's formulation in Curley v. United States, 160 F.2d 229, 232-233 (D.C.Cir.1947):
"`"The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. . . ."
"`This view is equally applicable to a civil case to which the "clear and convincing" standard applies. . . .
"`. . . .
"`Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through *777 the prism of the substantive evidentiary burden. . . .
"`Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Adickes [v. S.H. Kress & Co.], 398 U.S. [144], at 158-159 [(1970)]. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. Kennedy v. Silas Mason Co., 334 U.S. 249 (1948).
"`In sum, we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. . . . Consequently, where the New York Times [Co. v. Sullivan, 376 U.S. 254 (1964),] "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute concerns actual malice, clearly a material issue in a New York Times case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.'
"477 U.S. at 252-56, 106 S.Ct. 2505 (emphasis added; footnote omitted)."
KGS Steel, 47 So.3d at 762 (Murdock, J., concurring in the result) (footnote omitted; some emphasis omitted; some emphasis added).
Subsections (a) and (c) of § 12-21-12, Ala.Code 1975, referred to above, were enacted by the legislature as part of tort-reform legislation in 1987. Section 25-5-81(e), Ala.Code 1975, was enacted by the legislature in 1992 as part of the amendments to the Workers' Compensation Act. Subsections 12-21-12(a) and (c) address the amount of proof necessary for the "establishment of jury issues in regard to tort claims generally." Lowman v. Piedmont Exec. Shirt Mfg. Co., 547 So.2d 90, 95 (Ala.1989). On the other hand, the subsequently enacted § 25-5-81(e) addresses specifically the standard of review applicable to factual findings made by the trial court in the less general and more specific area of workers' compensation law. It was well within the purview of the legislature, in enacting § 25-5-81(e), to fashion a substantial-evidence standard of reviewing factual findings of the trial court that is applicable to both the preponderance-of-the-evidence and clear-and-convincing-evidence standards of proof.
In sum, the statutorily prescribed substantial-evidence standard of appellate review in workers' compensation cases makes no distinction between the preponderance-of-the-evidence level of proof and the clear-and-convincing-evidence level of proof and is applicable to findings of fact made pursuant to each, albeit in necessarily *778 different degrees because of the heightened level of evidence necessary to satisfy the latter. Put another way, the quantum of proof necessary to sustain on appeal, as supported by substantial evidence in the record, a finding of fact based on a clear-and-convincing-evidence standard is greater than the quantum of proof necessary to sustain on appeal, as supported by substantial evidence in the record, a finding of fact based on the lesser standard of a preponderance of the evidence.
Stated specifically in the context of a substantial-evidence standard of review required in a proceeding like the one before us, a cumulative-physical-stress/gradual-deterioration worker's compensation case, the burden that an employee must bear was accurately stated by then Judge Murdock in his special concurrence:
"[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly [as clear and convincing is defined by § 25-5-81(c)] establish the fact sought to be proved."
KGS Steel, 47 So.3d at 761.
To analogize the test set out above by Judge Prettyman for trial courts ruling on motions for a summary judgment in civil cases to which a clear-and-convincing-evidence standard of proof applies, "the judge must view the evidence presented through the prism of the substantive evidentiary burden"; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court's weighing of the evidence, that would "produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion." § 25-5-81(c).
In reviewing a decision of the trial court, an appellate court is not permitted to reweigh the evidence, because weighing the evidence is solely a function of the trier of fact. However, it is the function of the appellate court to ascertain that the trial court's findings of fact are supported by substantial evidence with due regard to, and respect for, the appropriate level of evidentiary proof required, which in this case is clear and convincing. Based on the foregoing, we conclude that the Court of Civil Appeals erred in applying a standard of review in this cumulative-physical-stress case that permitted the reweighing on appeal of the evidence presented to the trier of fact, i.e., the trial court.
We next address the issue whether the Court of Civil Appeals improperly considered only the testimony of the medical experts in determining the issue of causation in contravention to this Court's decision in Ex parte Price, 555 So.2d 1060, 1063 (Ala.1989). The main opinion of the Court of Civil Appeals states:
"As our recent opinion in Madix, Inc. v. Champion, 927 So.2d 833 (Ala.Civ.App. 2005), holds, a judgment awarding workers' compensation benefits based upon a cumulative-stress disorder or a gradual deterioration cannot properly be affirmed when the testimony of the pertinent medical experts establishes `no more than a "possibility" that [an employee's] employment contributed to [the employee's] injuries' so as to simply `"`guess' the employer into liability."' 927 So.2d at 838 (quoting Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App.1989))."
KGS Steel, 47 So.3d at 754. Although we agree that the evidence establishing causation *779 must be such as not to "guess" an employer into liability, to the extent that the main opinion suggests that proof of causation is solely dependent upon the presence of expert medical testimony, we reverse the judgment of the Court of Civil Appeals.[1]
This Court held in Ex parte Price that a trial court may find medical causation without the benefit of testimony from medical experts. Additionally, lay testimony may combine with medical testimony to provide proof of causation because "[i]t is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence, and not in the witness's use of any magical words or phrases, that the test finds its application." Ex parte Price, 555 So.2d at 1063. This "totality-of-the-evidence" standard is well established by caselaw and has become a bedrock principle of law in the area of workers' compensation law. This principle was reaffirmed in this Court's decision in Ex parte Southern Energy Homes, supra. Although Ex parte Southern Energy Homes, in which this Court reversed a finding of compensability, involved a traumatic-event injury, as opposed to a cumulative-physical-stress injury, this Court nevertheless rejected a per se rule that would require expert medical testimony to prove causation in a workers' compensation case. 873 So.2d at 1123-24.
Accordingly, we conclude that the Court of Civil Appeals erred to the extent that its per curiam opinion suggests that the presence or lack of expert medical testimony is solely determinative of the issue of causation in a workers' compensation case. We reverse the judgment of the Court of Civil Appeals and remand the case to that court for its further consideration consistent with this opinion.
REVERSED AND REMANDED.
SEE, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
COBB, C.J., and LYONS, J., concur in part in the rationale and dissent from the judgment.
MURDOCK, J., recuses himself.
LYONS, Justice (concurring in part in the rationale and dissenting from the judgment).
I agree with the main opinion's discussion of the standard of review and its embrace of then Judge Murdock's persuasive analysis of that issue in his opinion concurring in the result. However, I differ as to the appropriate relief.
The main opinion, as I understand it, returns the case to the Court of Civil Appeals for further consideration without the availability of reliance upon Madix, Inc. v. Champion, 927 So.2d 833 (Ala.Civ. App.2005), to the extent that the one-judge opinion below correctly concluded that it stands for the proposition that a judgment awarding benefits for a cumulative-stress disorder or a gradual deterioration cannot properly be affirmed when the testimony of the pertinent medical experts establishes no more than a possibility that the employee's employment contributed to the employee's injuries. I would reverse the judgment of the Court of Civil Appeals and remand the case with instructions to that court to affirm the judgment of the trial court. I agree with Judge Crawley's dissenting opinion:

*780 "In this case, although Dr. Meyer, KGS's authorized physician, determined that McInish's condition was not related to his employment, Dr. Kelsey stated that McInish's neck problems were `consistent with' the cumulative trauma described by McInish. In addition, McInish's physique had drastically changed from when he started working for KGS to the time of trial, and testimony indicated that the onset of McInish's symptoms of his condition occurred during his employment with KGS, where he was subjected to violent vibrations. The resolution of conflicting evidence as to medical causation is the province of the trial court, not the appellate courts, and based on the totality of the evidence the trial court could have reasonably found that McInish presented clear and convincing evidence indicating that his disability arose out of his employment."
I must therefore respectfully dissent from the judgment.
COBB, C.J., concurs.
NOTES
[1] See International Paper Co. v. Melton, 866 So.2d 1158 (Ala.Civ.App.2003), for a thorough discussion by then Judge Murdock of the nature of the evidence routinely found in cases involving cumulative-physical-stress injuries.