MOORE, Judge.
P.H. ("the mother") appeals from a judgment entered by the Colbert Juvenile Court ("the juvenile court") in four separate actions terminating her parental rights to T.B., H.B., C.B., and C.H. ("the children"). We affirm the juvenile court's judgment.
Procedural History
On January 26, 2016, the Colbert County Department of Human Resources ("DHR") filed separate petitions to terminate the parental rights of the mother to the children.[1] The mother answered the petitions on June 6, 2016. After a trial, the juvenile court entered a judgment terminating the mother's parental rights to the children. The mother filed her notices of appeal on July 15, 2016.
Facts
Mary Ellen Mayfield, a caseworker for DHR, testified that the children had previously been placed in foster care in August 2013. The record indicates that DHR had removed the children from the mother's care at that time based on the mother's drug use and her allowing individuals who were under the influence of drugs or alcohol to supervise the children. On August 18, 2015, the juvenile court entered an order, over the objection of DHR, returning custody of the children to the mother. The juvenile court specifically found that the mother had obtained stable housing and transportation, had maintained *1160 employment, had completed intensive outpatient drug treatment and parenting classes, had maintained consistent visitation with the children, and had tested negative on all drug screens. The juvenile court also noted that the mother had denied a current relationship with B.P., who had been reported to be a drug addict and to be abusive toward the mother, and had denied that B.P. had had access to the children.
The mother testified that, in August 2015, when the children were returned to her care, she was living in a mobile home. She testified that, within a week after the children were returned to her, one of the children had informed her that a DHR worker had spoken to her at school. The mother testified that she had decided to hide from DHR and that she had taken the children to Mississippi where, she said, they had stayed in various hotels until she ran out of money. The mother testified that, at that point, she and the children went to stay with B.P.'s grandmother. She testified that, once DHR found out where she was staying, she, B.P., and the children moved to another house in an effort to hide from DHR. She admitted that the weather had been cold and that the only source of heat in the house was a space heater in one room.
Ariel Brown, another DHR caseworker, testified that, on November 24, 2015, DHR had located the mother, B.P., and the children in the house and that the house had had no heat at that time. She testified that there also was no running water or furniture in the house, that the children were dirty, and that three of the children had had severely matted hair. The mother disputed that testimony. The mother admitted that she had refused to submit to a drug screen and that B.P. had tested positive for marijuana and alcohol. The evidence also indicated that three of the children had tested positive for methamphetamine; the mother testified that the children had taken cold medicine. Brown and Mayfield testified that the mother had been arrested for minor traffic offenses at that time and that the children had been placed in foster care.
Mayfield testified that when the children were taken back into DHR's custody, DHR had asked the mother to complete a substance-abuse assessment, to attend counseling, and to submit to a mental-health evaluation. The mother had not submitted to the mental-health evaluation; she had attended counseling for only one month and was not attending counseling at the time of the trial. Mayfield also testified that DHR had recommended that the mother submit to a domestic-violence assessment and that the mother had made an appointment for a domestic-violence assessment in January 2016 but had failed to attend that assessment. Mayfield testified that the mother had completed a substance-abuse assessment that had resulted in a recommendation that the mother attend inpatient drug treatment. She testified that she had informed the mother that DHR would pay for that treatment but that the mother had failed to complete that treatment because, she stated, the mother had not felt like she needed it. The mother admitted that, after completing outpatient drug treatment, she had been able to maintain her sobriety only three or four months. Indeed, the mother tested positive for marijuana in January and May 2016.
Mayfield testified that DHR had set up weekly visitations for the mother but that the mother had failed to visit between February 10, 2016, and May 4, 2016. The mother testified that, during that time, she had been held captive by B.P. She specifically testified that she had been allowed to leave his home only to go to work cleaning houses. She also testified that B.P. had *1161 severely abused her during that time, including having broken her jaw. Mayfield testified, however, that the mother had previously told her that she had broken her jaw in a fall. The mother testified that B.P.'s grandmother had eventually telephoned the police and that she had then gone to Safeplace, a domestic-violence shelter, for one month; the mother received counseling during the time she was at Safeplace
The mother admitted that, since November 2015, she had lived at eight places and that she had been in jail on two separate occasions. She testified, however, that a day before the trial, she had signed a lease on a house and that she had recently been hired to work at a gas station. She admitted that, at the time of trial, there were no utilities at the house and that there were no beds set up for the children.
Standard of Review
A judgment terminating parental rights must be supported by clear and convincing evidence, which is " ' "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." ' " C.O. v. Jefferson Cty. Dep't of Human Res., 206 So.3d 621, 627 (Ala. Civ. App. 2016) (quoting L.M. v. D.D.F., 840 So.2d 171, 179 (Ala. Civ. App. 2002), quoting in turn Ala. Code 1975, § 6-11-20(b)(4) ).
" '[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly ... establish the fact sought to be proved.'
" KGS Steel[, Inc. v. McInish,] 47 So.3d [749] at 761 [ (Ala. Civ. App. 2006) ].
"To analogize the test set out ... by Judge Prettyman [in Curley v. United States, 160 F.2d 229, 232-33 (D.C. Cir. 1947),] for trial courts ruling on motions for a summary judgment in civil cases to which a clear-and-convincing-evidence standard of proof applies, 'the judge must view the evidence presented through the prism of the substantive evidentiary burden'; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court's weighing of the evidence, that would 'produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion.' "
Ex parte McInish, 47 So.3d 767, 778 (Ala. 2008). This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing. See Ex parte T.V., 971 So.2d 1, 9 (Ala. 2007). When those findings rest on ore tenus evidence, this court presumes their correctness. Id. We review the legal conclusions to be drawn from the evidence without a presumption of correctness. J.W. v. C.B., 68 So.3d 878, 879 (Ala. Civ. App. 2011).
Discussion
On appeal, the mother first argues that there was not clear and convincing evidence of grounds to terminate her parental rights.
Section 12-15-319, Ala. Code 1975, provides, in pertinent part:
*1162 "(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parent[ ] of a child [is] unable or unwilling to discharge [his or her] responsibilities to and for the child, or that the conduct or condition of the parent[ ] renders [him or her] unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parent[ ]. In determining whether or not the parent[ ] [is] unable or unwilling to discharge [his or her] responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
"....
"(2) Emotional illness, mental illness, or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of a duration or nature as to render the parent unable to care for needs of the child.
"....
"(7) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parent[ ] have failed.
"....
"(10) Failure by the parent[ ] to maintain regular visits with the child in accordance with a plan devised by the Department of Human Resources, or any public or licensed private child care agency, and agreed to by the parent.
"(11) Failure by the parent[ ] to maintain consistent contact or communication with the child."
In the present case, the evidence indicated that, despite reasonable efforts by DHR and the mother's completion of a drug-treatment program, the mother had been unable to overcome her drug addiction. Ala. Code 1975, § 12-15-319(a)(2) & (7). Moreover, despite the recommendation that the mother complete inpatient drug treatment and DHR's willingness to pay for that treatment, the mother had refused to submit to it. In addition, the evidence indicated that the mother had failed to visit with the children for a period of three months. § 12-15-319(a)(10) & (11). Finally, although the mother claimed that she had moved on from an unhealthy relationship with B.P., the mother had again become involved with B.P. shortly after the children were returned to her custody. The mother's actions resulted in the children's not being properly cared for, being moved from place to place, hiding from DHR, living in a house with no heat, and having poor hygiene. Based on the foregoing, the juvenile court could have properly concluded that there was clear and convincing evidence indicating that the mother was "unable or unwilling to discharge [her] responsibilities to and for the child[ren]." § 12-15-319(a).
The mother next argues that DHR failed to use reasonable efforts to reunify her with the children. She specifically argues that DHR placed unreasonable restrictions on her visitation, that she had not known that DHR would pay for inpatient drug treatment until the month before the trial, and that she had been unable to make efforts to rehabilitate herself for three months because she had been held captive by B.P. We note, however, that the juvenile court heard evidence indicating that the mother had told Mayfield that she did not need inpatient drug treatment. Additionally, the evidence indicated that, for a three-month period and through no fault of DHR, the mother had failed to visit with the children. The juvenile court found the mother's explanation for not visiting the children during that three-month period, i.e., her being held captive by B.P.
*1163 except when she went to work, to be "bizarre." See Ex parte McInish, 47 So.3d at 778 (holding that the juvenile court must weigh the evidence). Furthermore, the mother herself, not DHR, made the choice to repeatedly become involved with B.P. to the detriment of the children.
We note that DHR is required to use " 'reasonable' efforts, not unlimited or even maximal efforts," to reunify a parent with a child. M.A.J. v. S.F., 994 So.2d 280, 292 (Ala. Civ. App. 2008). In the present case, it is clear that DHR used reasonable efforts, including offering drug treatment to the mother and referring her for a domestic-violence assessment. Therefore, we do not find error on this point.
Finally, the mother argues that there were viable alternatives to termination of her parental rights. Specifically, she argues that it would be in the best interests of the children to allow her to visit while the children remain in foster care or with a relative and she continues to rehabilitate herself.
In A.F. v. Madison County Department of Human Resources, 58 So.3d 205 (Ala. Civ. App. 2010), this court considered a case in which a mother had "failed to adjust her circumstances and resolve her substance-abuse problem over a four-year period." 58 So.3d at 214. The mother in A.F. argued that her parental rights could not be terminated because the half brother of the father of the child and the wife of the half brother had not been excluded as potential custodians for the child by the Madison County Department of Human Resources and because the juvenile court had commented that, after terminating the mother's parental rights, it would consider placing the child with those relatives. This court reasoned that, once the juvenile court had determined that the mother was not likely to overcome her drug addiction so as to be in a position to safely assume custody of the child within the foreseeable future, the juvenile court "was no longer required to consider whether a viable placement alternative existed before terminating the mother's parental rights." Id. at 215. Thus, this court held, the mere fact that the child could possibly be placed with relatives did not prevent the juvenile court from entering a judgment terminating the parental rights of the mother to the child.
Similarly, in the present case, the juvenile court could have been clearly convinced that the mother would not overcome the barriers to reunification with the children. Therefore, the juvenile court "was no longer required to consider whether a viable placement alternative existed before terminating the mother's parental rights." A.F., 58 So.3d at 215. We further note that the mother had failed to visit the children at all for a three-month period and that the children had been traumatized by her failing to show up for visitations. The evidence indicated that DHR had an adoptive resource who was willing to adopt all four of the children. Considering the mother's failure to rehabilitate herself and her lack of consistency in visitation, the juvenile court could have properly concluded that there was no viable alternative to termination of her parental rights.
Conclusion
Based on the foregoing, we affirm the juvenile court's judgment.
2150863-AFFIRMED.
2150864-AFFIRMED.
2150865-AFFIRMED.
2150866-AFFIRMED.
Thompson, P.J., and Pittman and Donaldson, JJ., concur.
Thomas, J., concurs in the result, without writing.

DHR also petitioned to terminate the parental rights of D.B., the father of T.B., H.B., and C.B., as well as the parental rights of D.C., the alleged father of C.H., and any unknown father of C.H. The juvenile court terminated the parental rights of all the aforementioned parties, and that aspect of the judgment is not at issue on appeal.