Rel: August 30, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2024

_____

## CL-2023-0944

_____

## B.T.

## v.

## Jefferson County Department of Human Resources and Legal Aid Society of Birmingham

## Appeal from Jefferson Juvenile Court, Bessemer Division
## (JU-21-387.02)

LEWIS, Judge.

B.T. ("the father") appeals from a judgment entered by the Jefferson

Juvenile Court, Bessemer Division ("the juvenile court") terminating his

parental rights to B.L.T. ("the child"). We reverse the juvenile court's judgment and remand this cause with instructions.

<u>Procedural History</u>

On January 9, 2023, the Jefferson County Department of Human Resources ("DHR") filed in the juvenile court a petition seeking to terminate the parental rights of B.K. ("the mother") and of the father to the child. A trial on the petition was held on November 8, 2023. On December 11, 2023, the juvenile court entered a final judgment terminating the parental rights of the mother and of the father to the child.[1] The juvenile court's final judgment provided, in pertinent part:

> "The Court does find, pursuant to § 12-15-319(a), Code of Alabama, 1975, that the … father [is] unable to discharge [his] responsibilities to and for the child due to [his] conduct and conditions and that such conduct and conditions are unlikely to change soon.
>
> "The Court does find, pursuant to § 12-15-319(a)(1), Code of Alabama, 1975, the … father ha[s] failed to visit with the minor and maintain consistent contact or attempts to

---

[1]On December 20, 2023, DHR filed a motion to alter or amend the final judgment to correct scrivener's errors, pointing out that the juvenile court had named the wrong attorney when identifying the father's guardian ad litem and that the court had inadvertently omitted the fact that there were two additional exhibits admitted into evidence by DHR. On that same day, the juvenile court granted DHR's motion and entered an amended final judgment correcting the scrivener's errors.

contact the child or to contact DHR to arrange visitation with the child.

"The court finds that … [the] father pursuant to § 12-15-319(a)(1), Code of Alabama, 1975, ha[s] not made attempts to arrange consistent visitation with [the child] and the living conditions said minor would be exposed to are not in her best interest.

"The court finds, pursuant to § 12-15-319(a)(10), Code of Alabama, [1975,] that the … father … ha[s] failed to provide for the material needs of the child. The court finds, pursuant to § 12-15-319(a)(12) Code of Alabama, 1975, that the … father has failed to adjust [his] circumstances to meet the needs of the child.[2]

"The court finds that 'DHR' has made reasonable efforts to locate relative resources for placement of the child. 'DHR' investigated all known relatives provided by the mother and father and independently identified relative resources for placement of the child have not yielded positive results. Relatives that were located are not suitable to take care of the minor child. 'DHR' did not find an interested or viable relative placement option for the child. The court finds there are not viable relative resources ready willing or able to receive custody of the child at the date of the termination trial."

On December 15, 2023, the father timely filed a postjudgment motion to alter, amend, or vacate or, in the alternative, for a new trial. On December 18, 2023, the juvenile court denied the father's

---

[2]We note that the juvenile court's citations to §§ 12-15-319(a)(1) and 12-15-319(a)(10) are to the incorrect subsections.

3

postjudgment motion. The father filed his notice of appeal to this court

on December 29, 2023.[3]

Standard of Review

"A judgment terminating parental rights must be supported by clear and convincing evidence, which is '"'[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.'"' C.O. v. Jefferson Cnty. Dep't of Hum. Res., 206 So. 3d 621, 627 (Ala. Civ. App. 2016) (quoting L.M. v. D.D.F., 840 So. 2d 171, 179 (Ala. Civ. App. 2002), quoting in turn Ala. Code 1975, § 6-11-20(b)(4)).

> "'"[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly … establish the fact sought to be proved."

"'KGS Steel, Inc. [v. McInish], 47 So. 3d [749,] 761 [(Ala. Civ. App. 2006)].

> "'… [F]or trial courts ruling … in civil cases to which a clear-and-convincing-evidence standard of proof applies, "the judge must view the evidence presented through a prism of the substantive evidentiary burden[,]" [Anderson v. Liberty Lobby,

---

[3]The mother did not appeal from the juvenile court's judgment.

Inc., 477 U.S. 242, 254, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)]; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court's weighing of the evidence, that would "produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion."'

"Ex parte McInish, 47 So. 3d 767, 778 (Ala. 2008). This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing. See Ex parte T.V., 971 So. 2d 1, 9 (Ala. 2007). When those findings rest on ore tenus evidence, this court presumes their correctness. Id."

M.W. v. Marshall Cnty. Dep't of Hum. Res., [Ms. CL-2023-0809, Mar. 15, 2024] ___ So. 3d ____, ____ (Ala. Civ. App. 2024).

### Discussion

On appeal, the father argues that the juvenile court erred in terminating his parental rights because the juvenile court's decision was not supported by clear and convincing evidence. Section 12-15-319, Ala. Code 1975, provides, in pertinent part:

"(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parent[] of a child [is] unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parent[] renders them unable to properly

5

care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parent[]. In a hearing on a petition for termination of parental rights, the court shall consider the best interests of the child. In determining whether or not the parent[] [is] unable or unwilling to discharge their responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:

"....

"(9) Failure by the parent[] to provide for the material needs of the child or to pay a reasonable portion of support of the child where the parent is able to do so.

"(10) Failure by the parent[] to maintain regular visits with the child in accordance with a plan devised by the Department of Human Resources, or any public or licensed private child care agency, and agreed to by the parent.

"(11) Failure by the parent[] to maintain consistent contact or communication with the child.

"(12) Lack of effort by the parent to adjust his … circumstances to meet the needs of the child in accordance with agreements reached, including agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review."

In its judgment, the juvenile court expressly found that DHR had proven that the father failed to visit with the child and failed to contact

6

DHR to arrange visitation with the child, see § 12-15-319(a)(10), Ala. Code 1975; that the father failed to maintain consistent contact with the child, see § 12-15-319(a)(11), Ala. Code 1975; that the father failed to provide for the material needs of the child, see § 12-15-319(a)(9), Ala. Code 1975; that the father failed to adjust his circumstances to meet the needs of the child, see § 12-15-319(a)(12), Ala. Code 1975; and that the living conditions the child would be exposed to in the father's care would not serve her best interests. Based on those factors, the juvenile court concluded that DHR had presented grounds upon which it could terminate the father's parental rights to the child.

In J.M. v. Marshall County Department of Human Resources, [Ms. CL-2023-0517, Mar. 15, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024), this court recently reversed and remanded a judgment of the Marshall Juvenile Court terminating the parental rights of J.M. to her child because there was insufficient evidence to sustain its finding that J.M. had abandoned her child and that she had failed to provide for the material needs of her child. In relation to material needs, this court explained that DHR alleged in its petition to terminate the mother's parental rights that the mother had not provided adequate food and

clothing for the child; however, "DHR made no attempt to substantiate that allegation with any evidence." ___ So. 3d at ___. Similarly, with respect to abandonment, there was evidence indicating that J.M. had lost custody of the child through the state's action but that she had maintained consistent visitation with the child. Therefore, this court concluded that the finding of abandonment was not supported by sufficient evidence.

In J.M., this court further held that the erroneous determinations of the juvenile court that J.M. abandoned the child and that J.M. failed to provide for the material needs of the child were not harmless "because, after an examination of the entire cause, it appear[ed] that that error ha[d] 'probably injuriously affected substantial rights of [J.M.]'" ___ So. 3d at ___ (quoting Rule 45, Ala. R. App. P.) It is noteworthy, however, that the court in J.M. did find that two other factors that contributed to the juvenile court's decision to terminate the parental rights of J.M. were supported by sufficient evidence. Therefore, this court held that

> "we cannot say that the juvenile court would have reached the same determination [to terminate J.M.'s parental rights] absent its consideration of the first two factors cited in the final judgment. See J.S. v. S.B., 357 So. 3d 660 (Ala. Civ. App. 2022) (holding that juvenile court's mistaken finding of fact

was not harmless error when that finding influenced ultimate determination to deny petition to modify custody of child)."

___ So. 3d at ___. On remand, this court instructed the juvenile court to vacate the erroneous findings that J.M. abandoned her child, that J.M. failed to provide for the material needs of her child, and to "reconsider whether the petition to terminate [J.M.'s] parental rights should be granted or denied in the absence of those findings." ___ So. 3d at ___.

In the present case, the father attacks the juvenile court's findings that he failed to visit with the minor child, that he failed to maintain consistent contact with the child, and that he failed to contact DHR to arrange visitation with the child. Our review of the record reveals that the father is correct that the juvenile court did not receive sufficient evidence to sustain its findings that the father failed to visit with the child, to maintain consistent contact with the child, and to contact DHR to arrange visitation with the child.

Testimony by the foster mother indicated that the father had been fairly consistent in his visitation with the child up until the month before the trial. Mikki Bendt, a visitation supervisor with Covenant Services who worked with the father and the child in facilitating visits and transportation, testified that the father had been fairly consistent with

his weekly two-hour visitations, and she noted that the most recent visitation between the father and the child occurred on the Friday before the trial. Bendt further testified that the father had weekly visits with the child for the 2 years that she had been supervising the visits and that the father attended the majority of his visits; Bendt agreed that the father attended in excess of 100 visits. Similarly, Deshaunda Cooper, a DHR caseworker, testified that the father had been fairly consistent with his visitations with the child and missed only "a couple" of the visits. In summary, the evidence presented at the trial indicates that the father did, in fact, maintain consistent visitation with the child on a weekly basis, with the exception of a small number of missed visits.

The father also attacks the juvenile court's finding that he failed to provide for the material needs of the child pursuant to § 12-15-319(a)(9). We agree that the juvenile court did not receive sufficient evidence indicating that the father had failed to provide for the material needs of the child. Section 12-15-319(a)(9) states that a ground for termination is "[f]ailure by the parent[] to provide for the material needs of the child or to pay a reasonable portion of support of the child <u>where the parent is able to do so</u>." (Emphasis added.)

10

Cooper testified that the father had been ordered to pay child-support in August 2022 in the amount of $246 per month. According to Cooper, at the time of the trial, the father was not current with his child-support obligation; she stated that the father's last child-support payment was made in August 2023, which was approximately 3 months prior to the trial. Cooper testified that an income-withholding order was entered with respect to the father's child support. When questioned regarding whether the reason the father was not current on his child-support obligation was that he was unemployed at the time, Cooper testified, "I guess that's why he's not current." Further, Cooper testified that the father provided the child with shoes, clothes, toys, snacks, birthday gifts, and "things like that."

In summary, the evidence presented at the trial indicates that the father did provide for the material needs of the child financially and otherwise, except for his being three months' delinquent on his child-support obligation, which, based on the testimony of Cooper, was due to his recent unemployment that halted his payments through the income-withholding order. Because the father had recently become unemployed, DHR did not meet its burden of proving that the father had "fail[ed] … to

11

provide for the material needs of the child or to pay a reasonable portion of support of the child <u>where the parent is able to do so</u>." § 12-15-319(a)(9) (emphasis added).

Based on the foregoing, we conclude that the juvenile court erroneously determined that the father had failed to maintain consistent visitation and contact with the child and that he had failed to provide for the material needs of the child. We further conclude that "those erroneous determinations were not harmless because, after an examination of the entire cause, it appears that error has 'probably injuriously affected substantial rights of the [father].'" <u>J.M.</u>, ___ So. 3d at ___ (quoting Rule 45, Ala. R. App. P.)

The juvenile court did cite § 12-15-319(a)(12) as another contributing factor to its decision to terminate the father's parental rights, stating that "the … father has failed to adjust [his] circumstances to meet the needs of the child." We conclude that that finding is supported by sufficient evidence. For example, although the father completed parenting classes as ordered, Cooper testified that she still had concerns about the father's ability to parent the child because of how he displayed his parenting skills in visitation. Moreover, the juvenile court

found that the living conditions in the father's home were inappropriate for the child.[4] That finding is supported by the evidence that there was "fake weed" found on the bathtub in the father's home during a home visit conducted by Cooper the day before the trial.[5]

Although we conclude that the juvenile court's reliance on § 12-15-319(a)(12) and the juvenile court's finding concerning the father's living conditions were supported by sufficient evidence, we cannot say that the juvenile court would have reached the same determination to terminate the parental rights of the father to the child absent its consideration of § 12-15-319(a)(9), (10), and (11). See J.S. v. S.B., 357 So. 3d 660 (Ala. Civ. App. 2022) (holding that juvenile court's mistaken finding of fact was not harmless error when that finding influenced the juvenile court's ultimate determination to deny petition to modify custody of child).

---

[4]Although a parent's living conditions are not a factor expressly listed in § 12-15-319, Ala. Code 1975, the factors listed are not exhaustive.

[5]The father claimed that the "fake weed" found on the bathtub belonged to the mother.

13

## Conclusion

Based on the foregoing, we reverse the final judgment entered by the juvenile court and remand the cause.[6] On remand, the juvenile court shall vacate the findings that the father failed to maintain consistent visitation and contact with the child and that the father failed to provide for the material needs of the child. The juvenile court shall then reconsider whether the petition to terminate the father's parental rights should be granted or denied in the absence of those findings. Upon reconsideration, the juvenile court shall then enter a new judgment reflecting its decision.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.

---

[6]The father also argues on appeal that the juvenile court erred in determining that DHR sufficiently explored viable alternatives to the termination of the father's parental rights. In light of our disposition of the father's first argument, we pretermit discussion of the issue of viable alternatives. See E.A.D. v. Randolph Cnty. Dep't of Hum. Res., 369 So. 3d 1069, 1077 (Ala. Civ. App. 2022).