THOMPSON, Presiding Judge.
In this case, N.J.D. (“the father”) asserts that he was denied his right to due process during proceedings involving the issues of the dependency and custody of his children (“the children”).
The record indicates that the Madison County Department of Human Resources (“DHR”) first filed a petition alleging that the father’s oldest child was dependent in June 2006. A second child was born in January 2007 and, in April 2007, was also included in the dependency proceedings. After a hearing held over several days in May and July 2008, the Madison Juvenile Court found the children to be dependent and, on September 8, 2008, entered an order awarding legal and physical custody of the children to their maternal grandfa *389 ther. The children’s mother and the father appealed from the juvenile court’s dependency judgment; however, the Madison Juvenile Court determined that the record created in that court was not adequate for appeal to this court, and the matter was transferred to the Madison Circuit Court (“the trial court”) for a trial de novo.
The trial court scheduled the “appeal trial” for March 23, 2009, but the matter was continued numerous times for a variety of reasons. Eventually, the trial court scheduled an “adjudicatory, disposition, and permanency hearing” for December 6 and 10, 2010. On December 2, 2010, the father filed a motion to continue the case because he was in Canada and was unable to return in time to prepare for the trial. The guardian ad litem appointed on behalf of the children opposed the continuance, and the father’s motion was denied. On December 20, 2010, the trial court dismissed the father’s appeal based on his failure to prosecute. The father filed a motion to set aside the dismissal. With the express permission of the parties, the trial court scheduled a hearing on the father’s motion for February 28, 2011. The father prevailed on his motion, and the case was reinstated.
An “adjudicatory, disposition, and permanency hearing” was begun on July 21, 2011. Based on evidence adduced during that hearing, the trial court allowed the father to retain a psychologist to evaluate the children and the father, among others, and the hearing was continued. On February 22, 2012, the trial court entered an order scheduling a “review hearing” for March 19, 2012. When the case was called on March 19, however, the trial court proceeded with a permanency hearing. The father was not present at the March 19, 2012, hearing, although he was represented by his attorney at the hearing.
At the start of the hearing, the trial court stated that it had read the report of the DHR social worker who had been handling the father’s case and asked the attorney for DHR to tell the court “what else [it] need[ed] to understand.” The attorney responded that “the real thrust of our dispute here today relates to the matter of visitation on the part of the father.” DHR’s attorney then reported that Stacy Ikard, the psychologist who had evaluated the children and the father after the July 2011 hearing, would not oppose the father’s having supervised visitation at the Family Services Center. The attorney told the trial court that there were “a number of options available for the Court” regarding visitation, including allowing the father to have supervised visitation or prohibiting him from having any visitation. DHR’s attorney went on to say that DHR was asking the trial court “to adopt a permanent plan of permanent relative placement” and to relieve DHR of protective supervision and any further involvement in this case.
The father’s attorney responded that the father was not present and that she was not prepared to consent to limited visitation without the consent of the father. Furthermore, she said, the father was not conceding that the children were, in fact, dependent. The father’s attorney told the trial court that she wanted the trial court to have the opportunity to hear what Dr. Ikard had to say about her experiences with the father and the children. When the trial court learned that Dr. Ikard was not present, it asked the father’s attorney if she wanted the court to schedule another hearing. The father’s attorney responded:
“Well, and I apologize. When I got this hearing my understanding was this was just a review. We just got the notice last week and my understanding *390 was it was just a review opportunity. I did notify my client when we got the notice. So that may have been my fault in miscommunieation, I did not realize that we were set for additional testimony on disposition of the case.”
No testimony was taken during the March 19, 2012, hearing. After hearing the positions of the children’s guardian ad litem and the attorneys representing the children’s mother and the maternal grandfather on the issue of the father’s visitation, the trial court asked the attorney for DHR to “prepare an order consistent with [DHRj’s recommendation and continuing the prohibition against visits either by the paternal grandmother or the father.” The attorney for the children’s mother asked whether the case was now closed, and the trial court stated: “As far as I can tell.”
On March 26, 2012, the trial court entered a separate order as to each of the father’s two children stating that the matter had come before the “juvenile court” “for permanency hearing.” In the judgments, the trial court purported to find that the children “remained” dependent. We note, however, that since the matter had first been appealed to the trial court for a trial de novo, the trial court had never made a finding that the children were dependent. We note that “ ‘ “[a] trial de novo means that the slate is wiped clean and a trial in the Circuit Court is had without any consideration being given to prior proceedings in another court.” ’ ” Mahoney v. Loma Alta Prop. Owners Ass’n, Inc., 84 So.3d 907, 916 (Ala.Civ.App.2011) (quoting Ex parte Dison, 469 So.2d 662, 665 (Ala.1984) (overruled on other grounds by Ex parte City of Dothan, 501 So.2d 1136 (Ala.1986)), quoting in turn Yarbrough v. City of Birmingham, 353 So.2d 75, 78 (Ala.Crim.App.1977)). Thus, the March 26, 2012, orders were the first adjudications of the children’s dependency.
In its March 26, 2012 judgments, the trial court also found that the return of the children to the father’s home would be contrary to their best interests, and it finalized the permanent relative placement of the children. Custody of the children was awarded to their maternal grandfather, with whom the children had lived since September 15, 2008, when the juvenile court entered its judgment finding that the children were dependent. The March 26, 2012, judgment also stated that the father was prohibited from visiting with the children; however, in the judgment, the trial court left open the possibility of future visitation in the event of a material change in circumstances. The trial court also closed the file in the matter. The father filed a motion to alter, amend, or vacate the March 26, 2012, judgment, which was denied by operation of law. The father appealed.
The father contends that his right to due process was violated when the trial court set this matter for a “review hearing” on March 19, 2012, but then treated the hearing as a “permanency hearing” without the presentation of testimony or other evidence. The father also contends that the trial court further deprived him of his right to due process when it entered its judgments adopting DHR’s plan of permanent relative placement and awarding permanent custody of the children to the maternal grandfather.
“ ‘[A] parent is entitled to due process in proceedings involving the custody of a child.’ Strain v. Maloy, 83 So.3d 570, 571 (Ala.Civ.App.2011). In Strain v. Malay, supra, this court explained:
“ ‘ “In dealing with such a delicate and difficult question — the welfare of a minor child — due process of law in legal proceedings should be observed. These settled courses of procedure, as established by our *391 law, include due notice, a hearing or opportunity to be heard before a court of competent jurisdiction.”
“ ‘Danford [v. Dupree ], 272 Ala. [517,] 520, 132 So.2d [734,] 735-36 [(1961)]. As this court has further explained:
“ ‘ “[P]rocedural due process contemplates the basic requirements of a fair proceeding including an impartial hearing before a legally constituted court; an opportunity to present evidence and arguments; information regarding the claims of the opposing party; a reasonable opportunity to controvert the opposition’s claims; and representation by counsel if it is desired.”
“ ‘Crews v. Houston Cnty. Dep’t of Pensions & Sec., 358 So.2d 451, 455 (Ala.Civ.App.1978) (emphasis added).’
“83 So.3d at 571.”
Gilmore v. Gilmore, 103 So.3d 833, 835 (Ala.Civ.App.2010).
This court has set forth the test to be applied in determining whether parents were afforded due process in custody-modification cases:
“The Supreme Court of the United States in Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), discussing the concept of due process, observed:
“ ‘ “Due process” is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts.... Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.’ 363 U.S. at 442, 80 S.Ct. at 1515.
“Thus, in deciding whether a parent has a right to due process when a party to a proceeding to determine custody of his or her minor child, the court will consider three factors: the nature of the right involved, the nature of the proceeding, and the possible burden on the proceeding.”
Thorne v. Thorne, 344 So.2d 165, 169 (Ala.Civ.App.1977).
As to the nature of the right involved, it is now well settled that “[t]he right to maintain family integrity is a fundamental right protected by the due process requirements of the Constitution.” Bowman v. State Dep’t of Human Res., 534 So.2d 304, 305 (Ala.Civ.App.1988). Furthermore, a parent has a prima facie right to the custody of his or her child. Id.; see also A.K. v. Henry Cnty. Dep’t of Human Res., 84 So.3d 68, 69 (Ala.Civ.App.2011). The United States Supreme Court has held that that prima facie right is protected by the Due Process Clause of the United States Constitution. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (holding that, under the Due Process Clause of the 14th Amendment, the father of illegitimate children was entitled to a hearing on his fitness as a parent before the state could take his children away from him).
The Thorne court continued its analysis of the factors to consider when determining whether a parent has been deprived of due process:
“With regard to the nature of the proceeding, the question is whether affording due process to the parent of a child in a custody proceeding interferes *392 with the court’s responsibility to protect the welfare and best interest of the child. This requires a balancing of the right of the parent, discussed above, against the interest of the State of Alabama, since the child becomes a ward of the court, which is in turn an arm of the state. It should be kept in mind that at issue is the due process requirement of notice to the parent that his or her right to custody of the child is to be considered by the court.
[[Image here]]
“Although the state has a compelling interest in determining the best interest and welfare of a child, the interest is not compelling enough to allow the determination to be made without notice to the child’s parents. The purpose of requiring notice is to preserve the fairness of the hearing; and it is of vital importance to the child, as well as the parent, that the hearing be fair. A parent must have notice of the issues the court will decide in order to adduce evidence on those issues before the court, to give the court a basis from which a determination most beneficial to the child can be made. Otherwise, the child, rather than being helped, might even be harmed.
“In the case before us, the mother through her own testimony and that of her parents attempted to show that the children were well-off in her custody. However, had she known prior to the hearing that the court would consider her fitness for custody she could have— if she so desired — presented other witnesses and evidence to support her contention that she should retain custody of her children.
“Finally, we consider the burden requiring notice would place on the proceeding. We think such burden, if any, would be minimal. Only in rare circumstances would granting a continuance result in detriment to the child. In the few situations where it appears the actual health and physical well-being of the child are in danger, the court has authority under Ex parte White, [245 Ala. 212, 16 So.2d 500 (1944)], to make a temporary grant of custody until a final determination can be made. Thus, we conclude the parental right to due process far outweighs any burden that would be placed on the proceeding to determine that right.”
Thorne, 344 So.2d at 170-71 (emphasis added).
The rationale applied in Thorne also applies in this case. There is no dispute that the nature of the right involved here is the father’s right to custody of his children or, barring custody, his right to visit with his children.
The next factor — the nature of the proceeding — is the linchpin of the father’s argument. In Gilmore, supra, this court reversed what the trial court purported to be a final judgment on the merits of a custody-modification case after a hearing, which included the presentation of testimony and documentary evidence, was held on the issue of pendente lite custody only. We noted that, although the parties had appropriate notice of the claims each was asserting, the order scheduling the only hearing in the case was filed the day after the modification petition was filed, and it “gave no indication that the trial court intended that that hearing would be a final hearing on the merits.” Gilmore, 103 So.3d at 833. Additionally, the court reporter’s notations on the transcript for the hearing, held on February 2, 2012, indicated that it was a hearing on the mother’s motion for pendente lite custody. In reversing the “final judgment,” this court explained:
“[T]here was no indication in the record that the trial court intended to consider *393 the parties’ claims seeking a final custody determination at the February 2, 2012, hearing. Accordingly, we conclude that the trial court erred to reversal in entering a judgment on the merits without affording the parties an opportunity to fully litigate the action on the merits.”
Id. at 836.
The Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala.Code 1975 (“the Act”), provides for three types of hearings in dependency cases. The Act defines an adjudicatory hearing as “a hearing at which evidence is presented for a juvenile court to determine if a child is dependent.” § 12-15-310(a), Ala.Code 1975. As mentioned, although this case has been pending before the trial court for years, the March 26, 2012, judgment marked the first time the trial court had found the children to be dependent.
Once a court makes a finding of dependency, it may proceed to make a disposition of the case. A court may immediately proceed to the disposition of a case in the absence of objection showing good cause, or it may delay the disposition for a separate hearing. § 12-15-311, Ala.Code 1975. That statute further provides, in pertinent part:
“(b) In dispositional hearings, all relevant and material evidence helpful in determining the best interests of the child, including verbal and written reports, may be received by the juvenile court even though not admissible in the adjudicatory hearing. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports.
“(c) On its own motion or that of a 'party, the juvenile court may continue the dispositional hearing pursuant to this section for a reasonable period to receive reports and other evidence bearing on the disposition .... ”
§ 12-15-311(b) and (c) (emphasis added).
Once a child has been removed from the parent’s home, the trial court is required to hold periodic review hearings to ensure that “reasonable efforts are being made to finalize the existing permanency plan.” § 12-15-312(a)(3), Ala.Code 1975.
In the instant case, the evidence is undisputed that the father received notice that a review hearing would be held on March 19, 2012. At the hearing, the trial court heard the arguments of the attorneys representing the various parties on the issue of the father’s visitation. The trial court received no evidence regarding the psychologist’s evaluation of the children and the father, which was the basis for the trial court’s decision to continue the July 2011 hearing. During the March 19, 2012, hearing, DHR’s attorney, who said that he had only recently become involved in the case, mentioned that DHR recommended that the placement of the children with their maternal grandfather be made permanent. In reviewing the transcript of the March 19, 2012, hearing, we note that the attorneys for the other parties involved in this matter did not discuss the merits of DHR’s recommendation. After the hearing, the trial court entered a judgment— prepared by the attorney for DHR at the trial court’s request — in which it adopted DHR’s recommendation of permanent relative placement and closed the case file. The judgment indicated that it was entered after a permanency hearing on March 19, 2012.
Furthermore, as the father’s attorney pointed out, in past notices of hearings scheduled in this case, the trial court had stated whether the hearings were adjudicatory, dispositional, or for some other purpose, so when the notice of this hearing stated that it was to be a review hearing, *394 she relied on that statement. We find no evidence indicating that the father or his attorney were attempting to prolong the litigation or had any other improper purpose in them failure to have witnesses present and prepared to testify as to the psychologist’s evaluation of the father and the children. The father’s attorney came to the hearing prepared for a review hearing and not for a final dispositional hearing for which she had no notice. Thus, we conclude that, because the father was not notified of the nature of the proceedings, he was effectively denied the opportunity to present the evidence of the psychologist’s findings. The trial court’s finding of the need for the evaluations of the father and the children was the reason for the continuance of the previous hearing in the first place. It defeats the notion of fair play to prevent the father from presenting to the trial court the results of those evaluations. Accordingly, we conclude that, in failing to notify the father of the nature of the proceedings, the trial court deprived the father of his right to due process.
The third factor in the Thorne analysis requires us to weigh the burden on the proceeding that would result if the trial court provided notice to the father that the hearing would be a final hearing in the case determining whether the relative placement would be permanent and not simply a “review” hearing. As in Thorne, we conclude that the burden of providing notice to the father of the true nature of the proceeding would be minimal. The children are already in the custody of the maternal grandfather and have been for several years. Although we are aware that this case has been protracted, we cannot say that the father’s conduct at the March 19, 2012, hearing is to blame for delaying a final resolution. Consideration of this factor weighs in favor of the father.
For the reasons set forth above, we conclude that the judgment adopting DHR’s permanency plan, permanently placing the children in the maternal grandfather’s custody and closing the case, was entered in a manner that was inconsistent with due process. Accordingly, we reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.