C.O.

v.

JEFFERSON COUNTY DEPART-
MENT OF HUMAN RE-
SOURCES.

M.M.O.

v.

Jefferson County Department
of Human Resources.

2140752 and 2140756.

Court of Civil Appeals of Alabama.

April 1, 2016.

Seth D. Stringer, Birmingham, for appellant C.O.

Edward A. Merrell and Kenneth J. Baumann, Jr., of Merrell Law Firm, LLC, Hoover, for appellant M.M.O.

Sharon E. Ficquette, chief legal counsel, and Karen P. Phillips, asst. atty. gen., Department of Human Resources, for appellee.

Matthew T. Jackson, Birmingham, guardian ad litem.

DONALDSON, Judge.

M.M.O. ("the mother") and C.O. ("the father") separately appeal from judgments entered by the Jefferson Juvenile Court ("the juvenile court") finding their two children, P.O. (juvenile-court case no. JU–13–2135.01) and Ca.O. (juvenile-court case no. JU–13–2136.01), to be dependent and placing the children in the custody of M.O., a paternal aunt of the children. The mother also appeals from a judgment entered by the juvenile court finding her other child, J.M. (juvenile-court case no. JU–13–2134.01), to be dependent and placing that child in the custody of M.O. We affirm the

judgments in case nos. JU–13–2135.01 and JU–13–2136.01, relating to the juvenile court's findings of dependency and permanency determinations regarding P.O. and Ca.O. Because the mother failed to file a timely notice of appeal in case no. JU–13–2134.01, we dismiss the mother's appeal insofar as it relates to the judgment pertaining to J.M.

*Background*

On September 5, 2013, the Jefferson County Department of Human Resources ("DHR") filed three separate petitions in the juvenile court alleging that the children were dependent. At the time of the filing of the petitions, the mother had custody of the children. On November 22, 2013, the juvenile court entered pick-up orders authorizing law enforcement to remove the children from the mother's custody. Following a shelter-care hearing, the juvenile court entered orders on November 25, 2013, directing that the children be placed in the custody of a maternal aunt. Following a second shelter-care hearing, the juvenile court entered orders on January 2, 2014, directing that the children be placed in the custody of M.O. The juvenile court granted the mother and the father supervised visitation with the children, to occur every Saturday for a two-hour period at M.O.'s home.

On January 13, 2014, the juvenile court entered orders setting the trial for April 10, 2014. After a hearing on April 10, the juvenile court continued the trial indefinitely. The juvenile court then entered orders on May 2, 2014, setting the trial for August 1, 2014. On July 28, 2014, DHR filed a motion to quash a subpoena it had received from the mother or the father that sought production of documents in DHR's possession. The record does not show what specific records DHR sought to be protected by the court, but, pursuant to arguments raised by the parties at trial and on appeal, it is apparent that, at some point, the mother requested certain hospital records that DHR had obtained relating to the mother's medical treatment. In the alternative, DHR sought a protective order from the juvenile court authorizing an in camera inspection of the records by the juvenile court "to determine if the records contain evidence material and relevant to this case which should be released to the parties."

On August 1, 2014, the mother filed a motion to dismiss the dependency petitions, alleging that DHR had failed to respond to discovery requests, had produced no witness list, and had failed to produce evidence that the mother is not a suitable parent for the children. The juvenile court denied the motion at the commencement of the trial. On August 1, 2014, the juvenile court granted the father's motion to continue the trial and scheduled the matter for trial on October 24, 2014.

On August 4, 2014, the juvenile court entered an order denying DHR's motion to quash but granting DHR's motion for a protective order. In that order, the juvenile court stated as follows: "The Court, pursuant to the motion, has reviewed the said DHR records and documents in camera and has determined that certain portions thereof are relevant and material to the issues in this cause and are not otherwise reasonably available to the parties hereto. The record is hereby ordered to be made available to the Court by DHR immediately for inspection and use for trial purposes as may be appropriate under the rules of evidence." On October 24, 2014, the juvenile court entered an order stating, among other things, that the "matter [is] set for trial on 5/1/2015 @ 1:30pm."

On May 1, 2015, the juvenile court called the matter for trial. The mother and the father failed to appear, although their attorneys appeared on their behalf. The mother's attorney filed a motion to contin-

ue the trial, stating that the mother was incarcerated in the Birmingham City Jail. The juvenile court denied the mother's motion to continue and proceeded to hear testimony, including the testimony of various witnesses employed by DHR and of M.O.

Candace Sykes, a child-abuse and neglect worker with DHR, testified that the father suffered from schizophrenia and that he had been recently released from the psychiatric unit of the University of Alabama at Birmingham Hospital. Sykes testified that the father had tested positive for methadone, that he did not have a prescription for that drug, and that the father had reported that he had obtained the drug from a friend while the father was hospitalized. Sykes testified that she had investigated the mother after DHR received a report that the mother had exhibited drug-seeking behavior during her pregnancy with P.O. Sykes testified that the mother had reported that she had taken only medication that had been prescribed for her for health issues that were causing her pain. Under cross-examination, Sykes testified that she could not recall whether the mother had taken any medication that was not prescribed for her. Sykes could not recall whether the mother had tested positive for anything other than methadone, which had been prescribed for her.

M.O., the children's paternal aunt, testified that she has served as the children's custodian since December 2013. M.O. testified that she is ready, willing, and able to maintain custody of the children. She testified that the father suffers from mental-health issues, including paranoia. She testified that the father last visited the children a month before the trial. Before that, she said, he had visited the children during the Thanksgiving and Christmas holidays in 2014. She testified that the mother had last visited the children in September 2014. M.O. testified that she had known the mother for approximately three years. M.O. testified that she has witnessed the mother intoxicated. She testified that the father drinks alcohol heavily and that she did not believe that he was ready to have custody of the children. M.O. testified that the father is sometimes homeless when he is not living with his mother. M.O. testified that the father sometimes comes to her home when he is intoxicated and that he sometimes exhibits "crazy behavior" around the children. M.O. testified that the father does not take his prescribed medication and that he does not attend his medical appointments.

M.O. testified that the mother is not stable, that the mother does not have a job, and that the mother has not proven that she is ready to have custody of the children. M.O. testified that, in the summer of 2013, the mother had been prescribed methadone to help combat an addiction to Lortab. M.O. testified that she had personally witnessed an episode when the mother had acted strangely, was "talking out of her head," was foaming at the mouth, and was nonresponsive. M.O. testified that the mother would resort to begging for money at gas stations. M.O. testified that, one night in August 2013, the mother was found passed out at a red light in the driver's seat of a vehicle with the children inside the vehicle.

Monica Whitsey, a social worker with DHR, testified that she has worked on the family's case since July 2014 and that she has worked with the children, the mother, and the father. Whitsey testified that she did not have an opportunity to have an Individualized Service Plan meeting with the mother or the father. Whitsey testified that the mother was in the Birmingham City Jail on the date of trial, where she had been since February 2, 2015, on charges related to a traffic violation.

Whitsey testified that the mother had several other outstanding warrants for her arrest. Whitsey stated that the mother last visited the children in September 2014 and that the father last visited the children the month before trial. Whitsey testified that the mother had been intoxicated around the children. Whitsey testified that the mother had not complied with DHR's request that she provide the children's birth certificates, Social Security cards, and other personal documentation. Whitsey testified that she had talked to the mother concerning her need for drug treatment and that the mother had denied that she needed help.

During the trial, the juvenile court concluded in open court that it found from clear and convincing evidence that the children are dependent and in need of supervision of the state. The juvenile court then proceeded to the dispositional phase to determine matters pertaining to permanent placement of the children. The mother's attorney and the father's attorney made oral motions to continue the dispositional phase of the trial on the basis that they did not receive notice that the juvenile court would address permanency at the May 1, 2015, trial. The juvenile court denied the motions to continue.

On May 11, 2015, the juvenile court entered judgments finding the children to be dependent. In addition, the juvenile court granted permanent custody of the children to M.O., subject to the mother's and the father's visitation rights.

On May 13, 2015, the mother and the father filed separate motions to alter, amend, or vacate the judgments. Although the juvenile court entered an order purporting to deny the mother's and the father's motions on June 5, 2015, both postjudgment motions had been denied by operation of law on May 27, 2015. See Rule 1, Ala. R. Juv. P. On May 27, 2015, the mother and the father filed separate "renewed" motions to alter, amend, or vacate the judgments, which the juvenile court purported to deny on June 5, 2015. The father filed notices of appeal in the cases involving Ca.O. and P.O. on June 10, 2015. The father's appeal was docketed by this court as appellate case no. 2140752. The mother filed notices of appeal in all three cases on June 15, 2015. The mother's appeal was docketed by this court as appellate case no. 2140756. This court consolidated the appeals *ex mero motu.*

## Discussion

### I. *DHR's Motion to Dismiss*

■ DHR has filed a motion to dismiss as untimely the mother's appeal insofar as it pertains to the judgment entered in case no. JU–13–2134.01, the case pertaining to J.M. In a juvenile case, a notice of appeal must be filed within 14 days of the date of the entry of the judgment or the denial of a timely filed postjudgment motion. See Rule 28, Ala. R. Juv. P., and Rule 4(a), Ala. R.App. P. Rule 4(a)(2) provides that, "[i]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days (2 weeks) of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires." The father filed notices of appeal from the juvenile court's judgments pertaining to Ca.O. and P.O. on June 10, 2015, which was within 14 days of the denial of the postjudgment motions by operation of law on May 27, 2015; however, as noted, he filed notices of appeal only in the cases involving Ca.O. and P.O. (juvenile-court case nos. JU–13–2135.01 and JU–13–2136.01). The mother filed notices of appeal in all three cases on June 15, 2015, or 5 days after the father filed his notices of appeal in case nos. JU–13–2135.01 and JU–13–2136.01. Pursuant to Rule 4(a)(2), the mother's notices of appeal in JU–13–2135.01 and JU–13–2136.01 were timely.

However, the juvenile court adjudicated the case involving J.M., case no. JU–13–2134.01, with the cases involving J.M.'s half siblings, Ca.O. and P.O. Because J.M. is not the father's child, the father was not involved in case no. JU–13–2134.01; therefore, the father's notices of appeal in case nos. JU–13–2135.01 and JU–13–2136.01 did not trigger the 14–day cross-appeal period under Rule 4(a)(2) so as to benefit the mother in case no. JU–13–2134.01. The juvenile court's judgment in case no. JU–13–2134.01 became a final and appealable judgment on May 27, 2015, when the mother's postjudgment motion was denied by operation of law. The mother's "renewed" postjudgment motion filed on May 27, 2015, was neither timely nor a proper vehicle for asserting the same substantive arguments she had already raised in her initial postjudgment motion. See, e.g., *Curry v. Curry*, 962 So.2d 261, 264 (Ala.Civ.App.2007) (a second post-judgment motion that does not seek relief different from a previously filed post-judgment motion is merely repetitive and does not toll or extend the time for ruling on the postjudgment motion). Therefore, the mother's June 15, 2015, notice of appeal from the juvenile court's judgment entered in case no. JU–13–2134.01 was untimely. Accordingly, this court does not have jurisdiction over the appeal from that judgment, and we dismiss that portion of the mother's appeal pertaining to J.M.

## II. *Dependency*

■ The mother contends that the juvenile court lacked clear and convincing evidence to support the conclusion that P.O. and Ca.O. are dependent.[1] See Ala. Code 1975, § 12–15–311(a) (requiring clear and convincing evidence to establish that a child is dependent). According to Ala. Code 1975, § 12–15–102(8), a part of the Alabama Juvenile Justice Act ("the AJJA"), Ala.Code 1975, § 12–15–101 et seq., a "dependent child" is

"a. A child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:

"1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12–15–301[, Ala. Code 1975,] or neglect as defined in subdivision (4) of Section 12–15–301, or allows the child to be so subjected.

"2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.

"3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.

"4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the terms of the compulsory school attendance laws of this state.

"5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12–15–301.

"6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.

"7. Who has been placed for care or adoption in violation of the law.

---

1. The father does not assert on the appeal that the juvenile court erred in finding P.O.

and Ca.O. to be dependent.

"8. Who, for any other cause, is in need of the care and protection of the state."

"Clear and convincing evidence" is " '[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.' " *L.M. v. D.D.F.*, 840 So.2d 171, 179 (Ala.Civ.App.2002) (quoting Ala. Code 1975, § 6–11–20(b)(4)); see also *Ex parte McInish*, 47 So.3d 767 (Ala.2008) (explaining standard of review of factual determinations required to be based on clear and convincing evidence). "However, matters of dependency are within the sound discretion of the trial court, and a trial court's ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong." *J.S.M. v. P.J.*, 902 So.2d 89, 95 (Ala.Civ.App.2004).

In these cases, it was uncontested that the mother struggled with an addiction to Lortab, and testimony showed that the mother had been prescribed methadone in order to treat her addiction. Testimony showed that the mother had been seen intoxicated and that she was incarcerated at the time of trial. The juvenile court could have concluded that the children were in need of the care and protection of the state because the mother's drug use impacted the health and safety of the children. The juvenile court could have been persuaded by M.O.'s testimony that the mother had been incoherent and unresponsive on one occasion. Furthermore, the juvenile court could have determined that the mother's being passed out at a red light with the children in the car showed that the mother's condition placed the children at harm. After a review of the record, we conclude that the juvenile court could have correctly determined that clear and convincing evidence existed to show that the P.O. and Ca.O. are dependent.

### III. *Jurisdiction and Venue*

The mother asserts that DHR failed to prove that the events surrounding the mother, the father, and the children took place in Jefferson County, and therefore, she asserts, the juvenile court erred in failing to dismiss the petitions on the basis that it lacked subject-matter jurisdiction. Section 12–15–114(a), Ala.Code 1975, a part of the AJJA, vests the juvenile courts with exclusive original jurisdiction over proceedings in which a child is alleged to be dependent. The petitions filed by DHR invoked the dependency jurisdiction of the juvenile court, and the juvenile court, upon finding the children to be dependent, properly entered a judgment in each case. We find nothing in the record to support the mother's contention that the juvenile court lacked subject-matter jurisdiction.

To the extent that the mother contends that venue was improper in Jefferson County, we examine whether the mother adequately preserved the issue of venue for appellate review. The issue of venue may be waived. Pursuant to Rule 12, Ala. R. Civ. P.,[2] an objection to venue must be raised either in the first responsive pleading, by a motion filed before the first responsive pleading, or by an amendment permitted by Rule 15(a), Ala. R. Civ. P. See Rule 12(b) and (h)(1). See also *Ex parte Mundi*, 161 So.3d 241, 243–44 (Ala. Civ.App.2014). No party raised an objection to venue until the mother moved for a dismissal of the petitions in open court at trial. Therefore, to the extent that the

---

**2.** Pursuant to Rule 1(A), Ala. R. Juv. P., the Alabama Rules of Civil Procedure apply to juvenile-court proceedings to the extent that they are not contrary to pertinent juvenile-procedure rules or statutes.

mother asserts that venue was improper, the mother waived any issue regarding improper venue by failing to file a timely objection to venue.

### IV. *Medical Records*

■ The mother contends that the juvenile court erred by not allowing her to obtain copies of certain medical records of the mother that had been subpoenaed by DHR and that were purportedly on file with the juvenile-court clerk. The mother contends that the juvenile-court clerk was required to allow her to obtain the documents in question pursuant to Rule 34, Ala. R. Civ. P., and Rule 16.1, Ala. R.Crim. P.[3] Those rules of court pertain to discovery and production of documents and other tangible evidence in civil cases and in criminal cases, respectively. They do not place a burden on the court to produce documents and tangible things that are in the court's possession. Although the record indicates that one or more of the parties propounded discovery requests to DHR, the mother did not file a motion under Rule 37, Ala. R. Civ. P., to compel DHR to produce the pertinent medical records. Additionally, it is apparent from the record that the medical records in question were subject to a protective order entered by the juvenile court pursuant to Rule 26(c), Ala. R. Civ. P. Furthermore, at the commencement of the trial, the mother and the father objected to the introduction of the medical records on the basis that they had been unable to obtain copies of the documents from the juvenile-court clerk. The juvenile court recessed the trial temporarily to allow all parties an opportunity to inspect the medical records. Ultimately, the juvenile court sustained the objection and disallowed DHR from submitting the medical records into evidence or from presenting any testimony regarding the medical records. The mother has failed to demonstrate that she was prejudiced by the juvenile court's rulings regarding this issue.

### V. *Notice*

■ The mother and the father contend that their due-process rights were violated when the juvenile court entered a disposition regarding the children without providing the mother or the father with notice that the May 1, 2015, trial would address matters pertaining to permanent placement of the children. The mother and the father cite three recent cases in which this court has addressed this issue. See *A.D.G. v. D.O.*, 160 So.3d 783 (Ala.Civ.App. 2014); *M.E. v. Jefferson Cty. Dep't of Human Res.*, 148 So.3d 737, 740 (Ala.Civ.App. 2014); and *N.J.D. v. Madison Cty. Dep't of Human Res.*, 110 So.3d 387, 391 (Ala.Civ. App.2012).

In *M.E.*, the mother in that case received notice that a scheduled hearing was to be a dispositional "review hearing." After the hearing, however, the trial court awarded custody of the mother's minor son to the son's maternal grandfather and his wife and closed the case to further review. This court held:

> "Due process of law should be observed in legal proceedings dealing with ' " ' "the welfare of a minor child." ' " ' *N.J.D. [v. Madison Cty. Dep't of Human Res.]*, 110 So.3d [387] at 391 [ (Ala.Civ.App.2012) ] (quoting *Gilmore v. Gilmore*, 103 So.3d 833, 835 (Ala.Civ. App.2012), quoting in turn *Strain v. Maloy*, 83 So.3d 570, 571 (Ala.Civ.App.

---

**3.** Although § 12–15–133, Ala.Code 1975, the provision of the AJJA concerning confidentiality of juvenile records, generally authorizes a parent to inspect and copy records, reports, and information, the mother makes no argument regarding the applicability of this statute to the medical records in question. Thus, that argument is waived. See Rule 28(a), Ala. R.App. P. See also *White Sands Grp., L.L.C. v. PRS II, LLC*, 998 So.2d 1042, 1058 (Ala.2008).

2011), quoting in turn *Danford v. Dupree,* 272 Ala. 517, 520, 132 So.2d 734, 735 (1961)). In *N.J.D.,* this court applied a three-factor test set forth in *Thorne v. Thorne,* 344 So.2d 165, 169 (Ala.Civ.App.1977), to decide in a dependency case whether a parent was deprived of due process in legal proceedings that determined permanent custody of the parent's children. 110 So.3d at 391–94. We considered ' "the nature of the right involved, the nature of the proceeding, and the possible burden on the proceeding." ' 110 So.3d at 391 (quoting *Thorne,* 344 So.2d at 169). We held that the parent had been deprived of due process in the dependency case because the parent's right to custody of his children was protected by due process; the parent was not provided notice, as required by due process, of the nature of the proceedings; and the burden of providing notice to the parent was minimal.

"The mother argues that the holding in *N.J.D.* is controlling in this case. First, she asserts that the nature of the right involved, as in *N.J.D.,* is a parent's right to custody of her child and that due process requires adequate advance notice of proceedings that could result in a deprivation of that right. Second, she asserts that the notice of the hearing failed to adequately inform her of the purpose of the proceedings. Both the trial court in *N.J.D.* and the juvenile court in this case provided notice that a scheduled hearing would be a review hearing, but on the scheduled date the proceedings in both cases were conducted as a permanency hearing. After the hearing, the court in each case entered a judgment that finalized the permanency plan, awarded permanent custody of the affected child or children with a grandparent or grandparents, and closed the case. Moreover, the juvenile court in this case did not take any sworn testimony, and it entered its judgment over the objection of the mother. Finally, with respect to the third consideration of the *Thorne* test, like in *N.J.D.,* providing the mother notification of the purpose for the hearing would have required only minimal effort.

" ' " " '[D]ue process of law means notice; a hearing according to that notice, and a judgment entered in accordance with such notice and hearing.' " ' " *M.H. v. Jer. W.,* 51 So.3d 334, 337 (Ala.Civ.App. 2010) (quoting *Neal v. Neal,* 856 So.2d 766, 782 (Ala.2002), quoting in turn *Frahn v. Greyling Realization Corp.,* 239 Ala. 580, 583, 195 So. 758, 761 (1940)) (emphasis omitted). In our review of the record, the facts support the mother's argument. Neither DHR nor the guardian ad litem refute the mother's argument that she was not provided with due process in this case. Therefore, we hold that, based on *N.J.D.,* the judgment was entered without providing the mother with due process."

148 So.3d at 740–41 (footnotes omitted).

In *A.D.G. v. D.O.,* 160 So.3d 783 (Ala. Civ.App.2014), the trial court entered an order setting a dependency matter for a "compliance/dispositional hearing." The trial court utilized a standardized form to complete the order, and the box on the form calling for a "permanency hearing" was not checked. When the hearing was called, the trial court proceeded to conduct a permanency hearing. This court held:

"There are no material factual differences between the instant case and *M.E.* and *N.J.D.* Moreover, as was the case in *M.E.,* neither DHR nor the maternal grandparents in this case have refuted the mother's argument that she was deprived of due process. Based on our holdings in *M.E.* and *N.J.D.,* we conclude that, when the March 24, 2014, hearing proceeded as a permanency hearing and the juvenile court entered

its subsequent order directing the maternal grandparents to retain custody of the child and closing the case to further review, the mother's due-process right was denied."

160 So.3d at 786. We also noted that "Rule 13(C), Ala. R. Juv. P., provides, in pertinent part, that, '[e]xcept for detention, shelter-care, and 72–hour hearings, written notice of all hearings . . . shall be provided to all parties in the proceedings[ ] and . . . shall include the date, time, place, and *purpose* of the hearings.' (Emphasis added.)" *Id.*

In these cases, however, the juvenile court entered an order on October 24, 2014, setting the matter for a trial to be held on May 1, 2015. Unlike the courts' orders in *A.D.G., M.E.,* and *N.J.D.,* the juvenile court's order in these cases did not state that the matter would be set only for a review hearing, i.e., a proceeding more akin to a pretrial information or planning proceeding. Instead, the juvenile court stated that the matter would be set for a trial on the pending issues, which involved determinations of dependency and the resulting adjudication of responsibility for the children. There is no dispute that the mother and the father received notice of the trial court's October 24, 2014, order setting the trial. The notice sufficiently apprised the mother and the father that the May 1, 2015, trial was to be an evidentiary hearing at which testimony would be taken and pursuant to which decisions affecting the substantive rights of the parties could be made. As this court has previously held, "[o]nce a child is found dependent, a juvenile court may proceed immediately to a dispositional hearing to determine the appropriate custodial arrangement for the child." *K.D. v. Jefferson Cty. Dep't of Human Res.,* 88 So.3d 893, 897 (Ala.Civ.App.2012)(citing § 12–15–311(a), Ala.Code 1975). The juvenile court, therefore, did not violate the mother's and the father's due-process rights when it scheduled a dependency trial and proceeded to a dispositional hearing after finding the children to be dependent.

## VI. *Motion to Continue*

The mother contends that the juvenile court erred in failing to grant her motion to continue the trial due to her incarceration. " 'Continuances are not favored and the trial court's denial of a motion for continuance will be upset only when palpable or gross abuse of discretion is shown.' " *State v. Thomas,* 189 So.3d 94, 96 (Ala.Civ.App.2015) (quoting *Perdue v. Mitchell,* 373 So.2d 650, 652 (Ala.1979)).

In support of this argument, the cites only *Ex parte U.S. Bank National Ass'n,* 148 So.3d 1060 (Ala.2014). We are unable to determine how the cited case addresses the standard for the continuance of a trial, because it does not appear to have any factual or procedural similarities to the current cases and does not advance the mother's argument in any manner.

"Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived. *Moore v. Prudential Residential Servs. Ltd. P'ship,* 849 So.2d 914, 923 (Ala.2002); *Arrington v. Mathis,* 929 So.2d 468, 470 n. 2 (Ala.Civ.App.2005); *Hamm v. State,* 913 So.2d 460, 486 (Ala. Crim.App.2002). This is so, because " 'it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.' " ' *Jimmy Day Plumbing & Heating, Inc. v. Smith,* 964 So.2d 1, 9 (Ala.2007) (quoting *Butler v. Town of Argo,* 871 So.2d 1, 20 (Ala.2003), quoting in turn *Dykes v. Lane Trucking, Inc.,* 652 So.2d 248, 251 (Ala.1994))."

*White Sands Grp., L.L.C. v. PRS II, LLC,* 998 So.2d 1042, 1058 (Ala.2008).

Accordingly, we will not reverse the juvenile court's judgments on the basis that it exceeded its discretion in failing to grant the mother's motion for a continuance of the trial.

### VII. *Reasonable Efforts*

■ The father argues that the juvenile court erred by finding that DHR had made reasonable efforts to unite him with his children. See § 12–15–312, Ala.Code 1975. In a similar argument raised by the appellant, i.e., the father, in *T.B. v. Lee County Department of Human Resources,* [Ms. 2140832, Feb. 12, 2016] —— So.3d ——, —— (Ala.Civ.App.2016), this court stated:

> "The father's argument assumes that DHR has a duty to use reasonable efforts to unite a child with a father with whom the child has never resided, a legal point that the father failed to raise at any time to the juvenile court. 'This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.' *Andrews v. Merritt Oil Co.,* 612 So.2d 409, 410 (Ala.1992). Therefore, we cannot address the father's argument on this point.[2]

> "[2]Because the issue is not properly before us, we do not reach any determination as to whether, under § 12–15–312, a juvenile court must use reasonable efforts to unite a child with a parent with whom the child has never resided."

Likewise, in the present cases, the father never raised this argument in the juvenile court. Therefore, his argument is waived, and we cannot reverse the juvenile court's judgments on this basis. See *Andrews v. Merritt Oil Co.,* 612 So.2d 409, 410 (Ala. 1992).

*Conclusion*

For the foregoing reasons, the mother's appeal, insofar as it addresses the juvenile court's judgment in juvenile case no. JU–13–2134.01, is dismissed. The juvenile court's judgments in juvenile case nos. JU–13–2135.01 and JU–13–2136.01 are affirmed.

2140752—AFFIRMED.

2140756—APPEAL FROM JUDGMENT IN JU–13–2134.01 DISMISSED; JUDGMENTS IN JU–13–2135.01 AND JU–13–2136.01 AFFIRMED.

THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.

THOMAS, J., concurs in the result, without writing.

**T.W.**