MOORE, Judge,
concurring specially.
In appeal number 2150429, D.T. (“the father”) appeals from a judgment entered by the Cullman Juvenile Court (“the juvenile court”) terminating his parental rights to D.J.T. (“the child”). In appeal number 2150463, B.H. (“the mother”) appeals from that same judgment to the extent that it terminated her parental rights to the child. This court has affirmed, without an .opinion, the juvenile court’s judgment.
Procedural History
The Cullman County Department of Human Resources (“DHR”) petitioned to terminate the parental rights of the father ánd the mother to the child. After a trial, the juvenile court entered a judgment terminating the parents’ parental rights to the child; that judgment provided, in part:
“The Court finds by clear and convincing evidence that the ... child is a resident of Cullman County, Alabama; that *468 the father and [the] mother of the ... child are unable or unwilling to discharge their responsibilities to and for the ... child and the conduct or condition [of the parents] is unlikely to change in the foreseeable future; that the child is dependent; and there is no viable alternative other than termination of parental rights.”
Both parents timely filed postjudgment motions. The juvenile court denied the father’s postjudgment motion, and the mother’s postjudgment motion was denied by operation of law. See Rule 59.1, Ala. R. App. P. Both parents timely appealed.
Standard of Review
The juvenile court’s judgment terminating the parents’ parental rights must be supported by clear and convincing evidence, which is “‘“[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.”’” C.O. v. Jefferson Cty. Dep’t of Human Res., 206 So.3d 621, 627 (Ala.Civ.App.2016) (quoting L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002), quoting in turn Ala. Code 1975, § 6-11-20(b)(4)).
“ ‘[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly ... establish the fact sought to be proved.’
“KGS Steel[, Inc. v. McInish,] 47 So.3d [749] at 761 [ (Ala.Civ.App.2006) ].
“To analogize the test set out ... by Judge Prettyman [in Curley v. United States, 160 F.2d 229, 232-33 (D.C.Cir.1947),] for trial courts ruling on motions for a summary judgment in civil cases to which a clear-and-convincing-evidence standard of proof applies, ‘the judge must view the evidence presented through the prism of the substantive evidentiary burden’; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court’s weighing of the evidence, that would ‘produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion.’ ”
Ex parte McInish, 47 So.3d 767, 778 (Ala.2008). This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing. See Ex parte T.V., 971 So.2d 1, 9 (Ala.2007). When those findings rest on ore tenus evidence, this court presumes their correctness. Id. We review the legal conclusions to be drawn from the evidence without a presumption of correctness. J.W. v. C.B., 68 So.3d 878, 879 (Ala.Civ.App.2011).
Discussion
On appeal, both the father and the mother argue that there was no clear and convincing evidence of the grounds for termination of their parental rights and that there was not clear and convincing evidence that DHR used reasonable efforts to reunite them with the child and that those efforts had failed. The father also argues that the juvenile court erred in denying his postjudgment motion without first conducting a hearing. The mother also argues that DHR did not meet its burden of identifying viable relative resources because it *469 did not attempt to contact relatives by mail until a week before the trial.
The evidence indicated that the child was medically fragile and that, because of his health conditions, he could not attend day care during the day. Dr. Barry Wood, a clinical psychologist, testified unequivocally that the mother, because of her mental deficiencies, could not parent the child alone. With regard to the father, Dr. Wood testified that, because of the father’s mental deficiencies, he also was not optimistic about the father’s being able to care for the child but that he needed to conduct more testing to be sure. The evidence indicated that the father worked during the day and would leave the child at home alone with the mother while he worked. Dr. Wood testified that the father did not recognize the mother’s lack of ability to care for the child. The evidence indicated that DHR had provided parenting services to the parents but that those services had not resulted in the mother’s being able to care for the child independently. Finally, with regard to relative resources, the evidence indicated that DHR had attempted to contact those relatives whom the parents identified as potential relative resources. Based on the foregoing evidence, I concur that there is clear and convincing evidence to support the juvenile court’s judgment. See C.O., 206 So.3d at 626. I also concur that, because the father’s post-judgment motion lacked probable merit, the juvenile court’s failure to hold a hearing on that motion is not reversible error.
However, I do not believe that termination of parental rights is the appropriate remedy in a case like this. The evidence in the record indicates that the parents consistently visited the child and that one or both had attended almost all the child’s therapy appointments since they had obtained reliable transportation. The evidence also indicates that the parents took diapers, wipes, clothing, and toys to the visits. The parenting supervisor testified that the parents and the child have a positive bond. She specifically testified that the child responds well to the parents, that he hugs them and talks to them, and that the child loves the parents and the parents love him. DHR did not present any compelling evidence to show that continued interaction between the parents and the child would harm the child. The evidence shows rather overwhelmingly that continuing visitation between the parents and the child would inure to the emotional benefit of the child.
I recognize that the parents cannot assume daily care of the child and that allowing them custody of the child would endanger the health of the child. However, the law should not resort to the most draconian remedy of executing parental rights in a situation like the one in this case in which the child and the parents share a beneficial relationship worthy of protection. I conclude that, in cases such as this one, the ideal remedy would be allowing for an “open adoption,” which would “allow for a parent whose parental rights have been severed to maintain a legally enforceable right to continued visitation with his or her child.” C.S. v. Mobile Cty. Dep’t of Human Res., 166 So.3d 680, 688 (Ala.Civ.App.2014) (Moore, J., concurring in the result in part and dissenting in part). Current Alabama law does not provide for such a remedy, but the legislature should rectify that omission to address situations like the one in this case in which termination of parental rights might be legally correct, but morally indefensible.