REL:  March 17, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

———————————————

### CL-2022-0787

———————————————

### S.D.

### v.

### Randolph County Department of Human Resources

———————————————

### CL-2022-0793

———————————————

### E.A.D.

### v.

### Randolph County Department of Human Resources

### Appeals from Randolph Juvenile Court
### (JU-20-14.03)

CL-2022-0787 and CL-2022-0793

MOORE, Judge.

In appeal number CL-2022-0787, S.D. ("the mother") appeals from a judgment entered by the Randolph Juvenile Court ("the juvenile court") in case number JU-20-14.03, terminating her parental rights to H.D. ("the child"), who was born on September 27, 2012. In appeal number CL-2022-0793, E.A.D. ("the father") appeals from that same judgment entered in case number JU-20-14.03 to the extent that it terminated his parental rights to the child. The mother's and the father's appeals were consolidated by this court ex mero motu. We reverse the juvenile court's judgment with respect to both the mother and the father.

Procedural History

The parties have previously appeared before this court. See E.A.D. v. Randolph Cnty. Dep't of Hum. Res., [Ms. 2210148, July 22, 2022] ___ So. 3d ___ (Ala. Civ. App. 2022). In E.A.D., this court considered appeals by the mother and the father from the entry of two separate judgments entered by the juvenile court that had terminated the parental rights of the mother and the father to the child's siblings, M.D. and C.D. ___ So. 3d at ___. The procedural history of those appeals indicates, among other

2

things, that, on June 8, 2021, the Randolph County Department of Human Resources ("DHR") filed separate petitions requesting that the juvenile court terminate the parental rights of the mother and the father to M.D. and C.D.; that a trial was conducted on October 21, 2021; that the juvenile court entered a separate judgment in each case on October 22, 2021, terminating the parental rights of the mother and the father to M.D. and C.D.; and that the mother and the father had appealed from those judgments.

Similarly, in case number JU-20-14.03, DHR filed a petition on June 8, 2021, to terminate the parental rights of the mother and the father to the child. The trial on the claims in the petition to terminate the parental rights of the mother and the father to the child was consolidated with the trial on the claims in DHR's petitions to terminate the parental rights of the mother and the father to M.D. and C.D., after which the juvenile court entered a judgment on October 22, 2021, terminating the parental rights of the mother and the father to the child. The mother and the father filed separate notices of appeal from that judgment. The mother's appeal was docketed as appeal number 2210164

and the father's appeal was docketed as appeal number 2210147. This court dismissed appeal numbers 2210147 and 2210164 based on our determination that the appeals had been taken from a nonfinal judgment as a result of the juvenile court's failure to dispose of a motion seeking to hold the mother in contempt filed by DHR in case number JU-20-14.03. See E.A.D. v. Randolph Cnty. Dep't of Hum. Res. (Nos. 2210147 and 2210164, May 12, 2022). See also A.C. v. C.C., 34 So. 3d 1281, 1286-87 (Ala. Civ. App. 2009) (noting that the pendency of an unadjudicated contempt motion alleging a party's failure to obey orders entered during the litigation renders a judgment nonfinal). On June 9, 2022, this court issued its certificates of judgment in appeal numbers 2210147 and 2210164. On June 16, 2022, the juvenile court entered an order in case number JU-20-14.03 denying DHR's contempt motion. On June 30, 2022, the mother and the father timely filed separate notices of appeal to this court. The juvenile court granted the mother's motion to incorporate the record on appeal in E.A.D. into these present appeals.[1]

---

[1]This court noted in E.A.D. that the appeals at issue in those appeals had also been consolidated with appeal numbers 2210147 and

4

## Standard of Review

A judgment terminating parental rights must be supported by clear and convincing evidence, which is "'"[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion."'" C.O. v. Jefferson Cnty. Dep't of Hum. Res., 206 So. 3d 621, 627 (Ala. Civ. App. 2016) (quoting L.M. v. D.D.F., 840 So. 2d 171, 179 (Ala. Civ. App. 2002), quoting in turn Ala. Code 1975, § 6-11-20(b)(4)).

> "'[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly … establish the fact sought to be proved.'
>
> "KGS Steel[, Inc. v. McInish], 47 So. 3d [749,] 761 [(Ala. Civ. App. 2006)].
>
> "… [F]or trial courts ruling … in civil cases to which a clear-and-convincing-evidence standard of proof applies, 'the judge must view the evidence presented through the prism of

---

2210164, but that those appeals had been dismissed by a separate order. ___ So. 3d at ___ n.1.

5

the substantive evidentiary burden[,]' [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986)]; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court's weighing of the evidence, that would 'produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion.'"

Ex parte McInish, 47 So. 3d 767, 778 (Ala. 2008). This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing. See Ex parte T.V., 971 So. 2d 1, 9 (Ala. 2007). When those findings rest on ore tenus evidence, this court presumes their correctness. We review the legal conclusions drawn from the evidence without a presumption of correctness. J.W. v. C.B., 68 So. 3d 878, 879 (Ala. Civ. App. 2011).

Analysis

The mother and the father argue that the juvenile court erred in terminating their parental rights to the child. A juvenile court may terminate parental rights only when one of the statutory grounds for termination has been established and there is no other viable alternative to termination. See Ex parte Ogle, 516 So. 2d 243 (Ala. 1987). The judgment at issue in the present appeals is based on the same evidence that was presented in E.A.D. In E.A.D., this court first considered the father's argument that the juvenile court had erred in terminating his parental rights to M.D. and C.D. because "there was not sufficient evidence, considering his current circumstances, to prove grounds for termination of his parental rights." ___ So. 3d at ___. In our opinion reversing the juvenile court's judgments terminating the father's parental rights to M.D. and C.D., this court stated, in pertinent part:

"We conclude that the facts in these cases are similar to those in H.P. [v. Jefferson County Department of Human Resources, [Ms. 2200467, Oct. 8, 2021] ___ So. 3d ___, ___ (Ala. Civ. App. 2021)], A.A. [v. Jefferson County Department of Human Resources, 278 So. 3d 1247, 1249 (Ala. Civ. App. 2018)], and M.G. [v. Etowah County Department of Human Resources, 26 So. 3d 436, 443 (Ala. Civ. App. 2009).] Like the mothers in H.P. and A.A., the father in the present cases had

7

initially failed to conquer his drug problem despite having access to drug-rehabilitation programs. Although at one point he had achieved sobriety for 30 days, he had relapsed after leaving a sober-living facility. However, the father subsequently completed inpatient and outpatient drug-rehabilitation programs at Rapha House and had been drug-free in the five months leading up to the trial. Although [DHR caseworker Kiera] Simmons testified that DHR was concerned about the possibility of the father's relapsing into drug use, she admitted that he had not tested positive for drugs in the five months preceding the trial and that she had not previously seen the father do well for that length of time. Based on the foregoing evidence, we conclude that, like in H.P., A.A., and M.G., 'DHR produced no evidence indicating that relapse was so likely or imminent that the [father] should have been considered as having a current drug problem that interfered with [his] ability to properly care for the children.' M.G., 26 So. 3d at 443. Moreover, like the mother in M.G., the father in the present cases had housing and employment at the time of the trial. Further, although the father had initially been inconsistent in his visitations with the children, he consistently visited with the children after he had ceased using drugs. It appears that the resolution of the father's drug issues had prompted improvement across the board in the father's life. Based on the foregoing evidence and considering this court's decisions in H.P., A.A., and M.G., we conclude that the juvenile court in the present cases could not have been clearly convinced that the father was 'unable or unwilling to discharge [his] responsibilities to and for the child[ren], or that the conduct or condition of the [father] renders [him] unable to properly care for the child[ren] and that the conduct or condition is unlikely to change in the foreseeable future.' § 12-15-319(a)[, Ala. Code 1975]."

E.A.D., ___ So. 3d at ___.

8

In light of our reversal of the judgments terminating the father's parental rights to M.D. and C.D., this court also reversed the judgments terminating the mother's parental rights to M.D. and C.D., with instructions to the juvenile court "to consider whether placement of [M.D. and C.D.] with the father would serve as a viable alternative to termination of the mother's parental rights and any further action consistent with this opinion." E.A.D., ___ So. 3d at ___.

In the present appeals, the mother and the father both argue that the judgment terminating their parental rights to the child should be reversed for the same reasons outlined by this court in E.A.D. DHR acknowledges, in a letter filed with this court, that the record on appeal in the present case is substantially the same as the record in E.A.D. and includes the same trial transcript and evidence that this court considered in E.A.D.; that the mother and the father assert the same arguments in the present appeals that they asserted in E.A.D.; and that, given those assertions and this court's opinion in E.A.D., "there appears to be no legitimate basis for contending that the [juvenile] court's final order terminating parental rights to [the child] should be affirmed." We agree.

9

Because the present appeals rest on the same facts as those that existed in <u>E.A.D.</u> and this court's analysis in the opinion issued in <u>E.A.D.</u> applies equally to the arguments asserted by the mother and the father in the present appeals, we adopt the reasoning in <u>E.A.D.</u> and reverse the juvenile court's judgment terminating the parental rights of the mother and the father to the child.

Specifically, we reverse the judgment entered by the juvenile court on June 16, 2022, which made final the juvenile court's October 22, 2021, judgment, insofar as it terminates the parental rights of the father to the child, and we remand the case for further proceedings consistent with this opinion and this court's reasoning in <u>E.A.D.</u> We also reverse the June 16, 2022, judgment, which made final the juvenile court's October 22, 2021, judgment, insofar as it terminates the parental rights of the mother to the child, and we remand the case with instructions to the juvenile court to consider whether placement of the child with the father would serve as a viable alternative to termination of the mother's parental rights, in accordance with this court's discussion in <u>E.A.D.</u> ___ So. 3d at ___.

CL-2022-0787 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

CL-2022-0793 -- REVERSED AND REMANDED WITH INSTRUCTIONS.

Thompson, P.J., and Edwards, Hanson, and Fridy, JJ., concur.