MOORE, Judge.
This appeal arises from a judgment entered by the Jefferson Juvenile Court (“the juvenile court”) terminating the parental rights of C.F. (“the mother”) to J.F. (“the child”).[1] We affirm the juvenile court’s judgment.
I. The Denial of the Mother’s Motion for a Continuance
The mother first argues that the juvenile court erred in denying her motion for a continuance of the trial on the petition to terminate her parental rights. The State Department of Human Resources (“DHR”) filed its petition to terminate the mother’s parental rights to the child on September 24, 2015. DHR served the mother with the petition, and, pursuant to Ala.Code 1975, § 12-15-320(a), the juvenile court set the trial for January 28, 2016.[2] The mother, who was incarcerated throughout the juvenile-court proceedings, did not file a motion requesting to be transported to the trial or a motion to take and submit her deposition in lieu of live testimony. On the scheduled trial date, the mother’s appointed counsel orally moved the juvenile court for a continuance on the ground that counsel had been unable to locate and communicate with the mother. The juvenile court denied the motion.
The mother argues that, in overruling the motion for a continuance, the juvenile court deprived the mother of the opportunity to secure her testimony through a deposition in violation of her right to due process. See generally Pignolet v. State Dep’t of Pensions & Sec., 489 So.2d 588, 591 (Ala.Civ.App.1986) (“Where there is representation by counsel and an opportunity to present testimony through deposition, then due process does not require that an incarcerated parent be allowed to attend the termination hearing.”). However, counsel for the mother did not assert that constitutional argument in her motion for a continuance or in her postjudgment motion. “It has long been the law in this state that constitutional questions not raised in the court below will not be considered for the first time on appeal.” Smith v. State Dep’t of Pensions & Sec., 340 So.2d 34, 37 (Ala.Civ.App.1976). Hence, we do not address the mother’s contention that the juvenile court violated her due-process rights by denying her motion for a continuance.
II. Sufficiency of the Evidence
The mother also argues that the juvenile court did not receive sufficient evidence to support its judgment. Generally speaking, upon determining that less drastic measures to termination of parental rights would be unavailing, see Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990), a juvenile court may terminate the parental rights of a parent to his or her child
“[i]f the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parent[ ] of a child [is] unable or unwilling to discharge [his or her] responsibilities to and for the child, or that the *1249 conduct or condition of the parent[ ] renders [him or her] unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future.”
Ala.Code 1975, § 12-15-319(a). The mother argues that the evidence in the record does not support grounds for termination and that the juvenile court erred in failing to place the child with one of the mother’s relatives as a viable alternative to termination of her parental rights.
A. Grounds fm' Termination
Grounds for termination must be proven by clear and convincing evidence, which is
“ ‘ “[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.” ’ ”
C.O. v. Jefferson Cty. Dep’t of Human Res., 206 So.3d 621, 627 (Ala.Civ.App.2016) (quoting L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002), quoting in turn Ala. Code 1975, § 6-11-20(b)(4)).
“ ‘[T]he evidence necessary for appellate affirmance of a judgment based on a factual finding in the context of a case in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly ... establish the fact sought to be proved.’
“KGS Steel[, Inc. v. Mclnish,] 47 So.3d [749] at 761 [ (Ala.Civ.App.2006) ].
“To analogize the test set out ... by Judge Prettyman [in Curley v. United States, 160 F.2d 229, 232-33 (D.C.Cir. 1947),] for trial courts ruling on motions for a summary judgment in civil cases to which a clear-and-convincing-evidence standard of proof applies, ‘the judge must view the evidence presented through the prism of the substantive evidentiary burden’; thus, the appellate court must also look through a prism to determine whether there was substantial evidence before the trial court to support a factual finding, based upon the trial court’s weighing of the evidence, that would ‘produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion.’ ”
Ex parte Mclnish, 47 So.3d 767, 778 (Ala.2008). This court does not reweigh the evidence but, rather, determines whether the findings of fact made by the juvenile court are supported by evidence that the juvenile court could have found to be clear and convincing. See Ex parte T.V., 971 So.2d 1, 9 (Ala.2007). When those findings rest on ore tenus evidence, this court presumes their correctness. Id.
The evidence in the record shows that the child, who was born in July 2010, had come under DHR’s protection in August 2013 after the mother was found incapacitated while attending an emergency-room visit for the child. The mother tested positive for cocaine shortly thereafter. After the child was removed from the mother’s custody, DHR requested that the mother complete a family drug-court program, submit to random drug screens, complete parenting classes, receive mental-health treatment, and obtain and maintain employment and suitable housing. Before October 2013, the mother had been expelled from the family drug-court program for her noncompliance with the program’s services and testing procedures. The mother also had not participated in parenting classes or mental-health treat *1250 ment and had not obtained employment. The mother had lost her housing in a fire and had not obtained replacement housing. By November 2013, DHR had lost contact with the mother. DHR later discovered that the mother had been jailed from November 2013 to January 2014.
In January 2014, the mother contacted DHR and informed a DHR employee that she had enrolled in a substance-abuse program at a facility called Oakmont Center and that she had scheduled a mental-health evaluation from a facility called Western . Mental Health. However, the mother failed to sign a release so that DHR could obtain her records from those facilities, and the mother did not supply DHR with any documentation to prove that she had received any drug-rehabilitation or mental-health treatment. The mother had not completed any part of her rehabilitation plan by April 2014 when the child was placed in foster care.
By November 2014, the mother had informed DHR that she was no longer using drugs. The mother also provided DHR a clean drug test dated November 6, 2014. However, the mother would not submit to random drug screening as DHR advised. The mother also informed DHR that she had obtained employment at a fast-food restaurant and that she was participating in a drug-rehabilitation program. The mother visited with the child inconsistently, sometimes failing to show without prior notice, upsetting the child. DHR again lost contact with the mother in December 2014.
In January 2015, DHR learned that the mother had again been incarcerated. At the time of trial, the mother was in federal prison for an unstated drug-related offense, The mother has not visited with the child since November 2014. The mother did not provide DHR with any evidence indicating that she had completed any of the steps initially outlined by DHR in its rehabilitation plan. At no point did the mother provide support for the child.
In its judgment terminating the mother’s parental rights to the child, the juvenile court determined, among other things, that the mother had abandoned the child. “Abandonment” is defined as
“[a] voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his or her presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.”
Ala.Code 1975, § 12-15-301(1). Although involuntary imprisonment alone does not equate to abandonment, a juvenile court can consider the voluntary conduct of the parent toward the child before and after incarceration as evidencing abandonment of the child. See J.L. v. State Dep’t of Human Res., 961 So.2d 839 (Ala.Civ.App.2007). In this case, the mother last visited the child in November 2014 and did not contact DHR thereafter. After November 2014, the mother never claimed her residual right to visitation with the child, see Ala,Code 1975, § 12-15-102(23) (indicating that a parent has a residual right to visit with a child after a juvenile court transfers custody of the child because of the dependency of the child), even telephonically. From that evidence, the juvenile court reasonably could have been clearly convinced that the mother had abandoned the child.
Under Ala.Code 1975, § 12-15-319(b),
“[a] rebuttable presumption that the parentf] [is] unable or unwilling to act as [a] parent[ ] exists in any case where the parent[] ha[s] abandoned a child *1251 and this abandonment continues for a period of four months next preceding the filing of the petition.”
Based on § 12-15-319(b), once DHR proved that the mother had abandoned the child in the four months before it filed its petition, the juvenile court could presume that the mother was unable or unwilling to act as a parent, and the burden shifted to the mother to rebut that presumption. See A.J.H.T. v. K.O.H., 983 So.2d 394, 400 (Ala.Civ.App.2007) (Moore, J., concurring in part and dissenting in part). In this case, the mother did not attend the trial, but her counsel presented several witnesses, none of whom offered any testimony designed to rebut the presumption that the mother was unable or unwilling to parent the child. The evidence showed that the mother was currently incarcerated in a federal prison where she obviously could not perform her parental duties, see K.A.P. v. D.P., 11 So.3d 812 (Ala.Civ.App.2008), and no witness testified that the mother was in a position to care for the child or that she would be free to resume her normal parental duties in the foreseeable future. Compare S.U. v. Madison Cty. Dep’t of Human Res., 91 So.3d 716 (Ala.Civ.App.2012) (authored by Moore, J., with Thompson, P.J., and Pittman, Bryan, and Thomas, JJ., concurring in the result) (reversing judgment terminating parental rights based on evidence indicating that incarcerated mother was residing in group home that allowed her to care for children and that mother would be released three weeks after trial). Therefore, we find ample evidence of at least one ground for termination of the mother’s parental rights.
B. Viable Alternatives
The mother next argues that the juvenile court erred in failing to place the child with one of the relatives of the mother. In Roe v. Conn, 417 F.Supp. 769 (M.D.Ala.1976), the United States District Court for the Middle District of Alabama held that a parent has a fundamental right to a continuing relationship with his or her natural child, which gives rise to substantive due-process rights that prevent the state from severing the relationship only when less drastic measures, such as placing the child with a relative, are unavailing. However, in C.C. v. L.J., 176 So.3d 208 (Ala.Civ.App.2015), this court recognized that substantive due-process rights arise only from ongoing, significant parental relationships, not merely biological connections. See Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). When a mother abandons her child and no longer maintains a significant parental relationship with her child, she loses her right to compel the state to exhaust viable alternatives before terminating parental rights. C.C., 176 So.3d at 215.
In this case, the juvenile court, upon finding that the mother had abandoned the child, did not have to consider the viability of placing the child with relatives before terminating the mother’s parental rights. Hence, any error the juvenile court might have committed in failing to consider that alternative would be harmless error that would not support a reversal of the judgment. See Rule 45, Ala. R.App. P. We recognize that the juvenile court did not rule on this ground, but, unless constrained by due process, we may affirm a judgment based upon any valid legal ground presented by the record, even one not considered by the juvenile court. Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013, 1020 (Ala.2003).

Conclusion

For the foregoing reasons, the judgment of the juvenile court is affirmed.
AFFIRMED.
*1252 PITTMAN and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, with writing.
THOMAS, J., concurs in the result, without writing.

. The judgment also terminated the parental rights of J.Y., the child's father, who was incarcerated for murder and who did not contest the petition, but he does not appeal.

. We note that § 12—15—320(a), Ala.Code 1975, provides, in pertinent part: ’
“Termination of parental rights cases shall be given priority over other cases. The trial on the petition for termination of parental rights shall be completed within 90 days after service of process has been perfected. ...”